# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## Case No. 24-2772

---

## UBER TECHNOLOGIES, INC.,

*Plaintiff-Appellant,*
v.

## KEVIN BODDIE; PENNSYLVANIA HUMAN RELATIONS COMMISSION,

*Defendants-Appellees.*

---

## BRIEF OF APPELLANT

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No. 2:23-cv-03780

---

William J. Simmons, Bar No. 206860
wsimmons@littler.com
Kevin B. Frankel, Bar No. 327459
kfrankel@littler.com
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
Telephone:  267.402.3000
Facsimile:   267.402.3131

*Attorneys for Plaintiff-Appellant,*
UBER TECHNOLOGIES, INC.

4914-7573-8886

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Under Federal Rule of Appellate Procedure 26.1 and Local Appellate Rule 26.1, Uber Technologies, Inc. ("Uber") states that it is a non-governmental corporation with no parent company. Uber is publicly traded under the symbol "UBER".

Respectfully submitted,

*s/ William Simmons*

William J. Simmons, Bar No. 206860
Kevin B. Frankel, Bar No. 327459

*Attorneys for Plaintiff-Appellant,*
UBER TECHNOLOGIES, INC.

Date: January 16, 2025

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ......................................................................................1

II.     JURISDICTIONAL STATEMENT .................................................4

III.    ISSUES PRESENTED ..........................................................................5

IV.     STATEMENT OF RELATED CASES ..........................................7

V.      STATEMENT OF THE CASE ...........................................................7

VI.     STANDARD OF REVIEW ................................................................13

VII.    SUMMARY OF ARGUMENT .........................................................13

VIII.   ARGUMENT............................................................................................16

    A.      Boddie's Arbitration Provision is Governed by the FAA, Which Requires Arbitration Agreement Terms to be Enforced As Written......................................................................................................16

    B.      Uber Stated a Claim Upon Which Relief May Be Granted Because Uber Plausibly Alleged Facts Satisfying The Threshold Requirements For An Order Compelling Arbitration.......18

    C.      The District Court Failed to Enforce the Delegation Clause Requiring Arbitration of Disputes Regarding "Interpretation, Application, Enforceability…or Validity of Th[e] Arbitration Provision".............................................................................................20

        1.      Under the FAA, a Court May Not Decide on an Arbitrability Dispute If It Is Clearly and Unmistakably Delegated to an Arbitrator ......................................................20

        2.      The District Court Erred in Deciding the Arbitrability Dispute Regarding the Arbitration Provision's Enforceability and Validity......................................................23

        3.      The District Court Erred in Deciding the Arbitrability Dispute Regarding the Arbitration Provision's Interpretation and Application ...............................................28

i

D. The District Court Erred in Interpreting the Arbitration Provision to Find That it Excludes Boddie's Discrimination Claims with the PHRC ........................................................................31

    1. The Arbitration Provision Broadly Applies to Any Individual Disputes "Arising Out of or Related to [Boddie's] Relationship with Uber" Including His Individual Discrimination Claims............................................31

    2. The Arbitration Provision Does Not Exclude Adjudication of All Claims Filed with the PHRC by Allowing for Administrative Exhaustion as Required by Law...............................................................................................32

E. The District Court Also Erred in Holding that the Arbitration Provision is Not Enforceable Because Boddie Has a Purported Legal Right to File Discrimination Claims with the PHRC ..............39

    1. Boddie is Required to Arbitrate His Individual Discrimination Claims under the FAA and Supreme Court Precedent........................................................................39

    2. Arbitration of Boddie's Claims Does Not Prevent the PHRC From Investigating Discrimination .............................43

F. The District Court Erred in Failing to Enforce the Class Action Waiver ....................................................................................46

IX. CONCLUSION...........................................................................................48

I. CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK .................................................50

II. CERTIFICATE OF SERVICE....................................................................51

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Restaurant*,
  570 U.S. 228 (2013)..................................................................................16

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..............................................................................44, 47

*AT&T Techs., Inc. v. Communs. Workers of Am.*,
  475 U.S. 643 (1986)..............................................................................21, 24

*Bossé v. N.Y. Life Ins. Co*.,
  992 F.3d 20 (1st Cir. 2021)......................................................................30

*Bruster v. Uber Techs. Inc.*,
  No. 15-cv-2653, 188 F. Supp. 3d 658 (N.D. Ohio 2016)...................................26

*Buckeye Check Cashing, Inc., v. CardegnaI*,
  546 U.S. 440 (2006)................................................................................17

*Camilo v. Uber Techs., Inc.*,
  No. 17-cv-9598, 2018 WL 2464507 (S.D.N.Y. 2018) .....................................26

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003)..................................................................................17

*Coulter v. Experian Info. Sols., Inc*.,
  2:20-cv-01814, 2021 WL 735726 (E.D. Pa. 2021) ...........................................30

*Cronin v. CitiFinancial Servs., Inc.*,
  352 F. App'x 630 (3d Cir. 2009) ..................................................................13

*Darrington v. Milton Hershey Sch.*,
  958 F.3d 188 (3d Cir. 2020) .......................................................................39

*De Angelis v. Icon Entm't Grp., Inc.*,
  364 F. Supp. 3d 787 (S.D. Ohio 2019) ..........................................................30

*DelRio-Mocci v. Connolly Props., Inc.*,
  672 F.3d 241 (3d Cir. 2012) ........................................................................18

4914-7573-8886

*Doe v. University of Sciences*,
    961 F.3d 203 (3d Cir. 2020) ...............................................................13

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)........................................................................16

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)............................................................................47

*Foresta v. Airbnb, Inc.*,
    No. 2:23-cv-01379, 2024 WL 329524 (E.D. Pa. Jan. 29, 2024) .......19

*Gilmer v. Interstate/Johnson Lane Corporation*,
    500 U.S. 20 (1991)..............................................................................43

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
    716 F.3d 764 (3d Cir. 2013) ...............................................................18

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    586 U.S. 63 (2019)........................................................................*passim*

*Howsam v. Dean Witter Reynolds*,
    537 U.S. 79 (2002)..............................................................................18

*Jacobs Field Servs. N. Am., Inc. v. Wacker Polysilicon N. Am., LLC*,
    375 F. Supp. 3d 898 (E.D. Tenn. 2019)..............................................29

*John Hancock Life Ins. Co. v. Wilson*,
    254 F.3d 48 (2d Cir. 2001) ..........................................................19, 20

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
    581 U.S. 246 (2017)............................................................................38

*Kreiger v. United States*,
    539 F.2d 317 (3d Cir. 1976) ...............................................................44

*Leboeuf v. Nvidia Corp.*,
    833 Fed. Appx. 465 (9th Cir. 2021)....................................................30

*Lee v. Uber Techs., Inc.*,
    208 F. Supp. 3d 886 (N.D. Ill. 2016)..................................................26

iv

*Lukus v. Westinghouse Electric Corp.*,
    419 A.2d 431 (Pa. Super. 1980) ..........................................................33

*MacDonald v. CashCall, Inc.*,
    883 F.3d 220 (3d Cir. 2018) .......................................................23, 24

*Mandel v. M & Q Packaging Corp.*,
    706 F.3d 157 (3d Cir. 2013) ...............................................................33

*McGee v. Armstrong*,
    941 F.3d 859 (6th Cir. 2019) ..............................................................30

*McIntosh v. White Horse Vill., Inc.*,
    176 F. Supp. 3d 480 (E.D. Pa. 2016) ..................................................36

*Med X Change, Inc. v. Enciris Techs. SAS*,
    No. 8:20-cv-1223-T-33AAS, 2020 WL 6287682 (M.D. Fla. 2020) ..................29

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ............................................................26

*Nelson v. Brown*,
    Civ. A. No. 17-cv-3232, 2018 WL 1933289 (E.D. Pa. Apr. 24,
    2018) .....................................................................................................18

*Palcko v. Airborne Express, Inc*,
    372 F.3d 588 (3d Cir. 2004) ...............................................................16

*Preston v. Ferrer*,
    552 U.S. 346 (2008)......................................................................17, 42

*Rent-A-Center., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)........................................................................19, 21

*Richemond v. Uber Techs., Inc.*,
    263 F. Supp. 3d 1312 (S.D. Fla. 2017) ...............................................26

*Sena v. Uber Techs., Inc.*,
    No. CV-15-02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. 2016) .................27

*Singh v. Uber Techs., Inc.*,
    67 F.4th 550 (3d Cir. 2023) ..........................................................17, 26

v

*Singh v. Uber Techs. Inc.*,
   939 F.3d 210 (3d Cir. 2019) ............................................................19

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984) ............................................................................17

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ........................................................................47

*Suarez v. Uber Techs., Inc.*,
   No. 8:16-CV-166-T-30MAP, 2016 WL 2348706 (M.D. Fla. 2016),
   *aff'd*, 688 F. App'x 777 (11th Cir. 2017) ........................................27

*Tomasko v. Ira H. Weinstock, P.C.*,
   357 F.App'x 472 (3d Cir. 2009) ......................................................25

*Uber Technologies, Inc. v. Blossomgame*,
   No. 20-cv-04842, 2021 WL 8317115 (E.D.N.Y. Oct. 29, 2021) .............3, 22, 37

*Varon v. Uber Techs., Inc.*,
   No. 15-cv-3650-MJG, 2016 WL 3917213 (D. Md. 2016) ................27

*Viking River Cruises, Inc. v. Moriana*,
   596 U.S. 639 (2022) ...................................................................38, 47

*Voorhees v. Montgomery Cty. Cmty. Coll.*,
   397 F. Supp. 3d 713 (E.D. Pa. 2019) ..............................................33

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ..........................................................................4

*Williams v. East Orange Cmty. Charter Sch.*,
   396 Fed. Appx. 895 (3d Cir. 2010) .................................................36

*Zawada v. Uber Techs., Inc.*,
   No. 16-cv-11334, 2016 WL 7439198 (E.D. Mich. 2016) ................27

*Zirpoli v. Midland Funding, LLC*,
   48 F.4th 136 (3d Cir. 2022) .............................................................21

**Statutes**

43 P.S. § 962(c)(1) ................................................................................4

9 U.S.C. § 2 ...................................................................................16, 17

9 U.S.C. § 16(a)(1)(B) ...........................................................................5

28 U.S.C. § 1291 ....................................................................................4

28 U.S.C. § 1332 ....................................................................................4

**Other Authorities**

16 Pa. Code. § 42.101 ...........................................................................42

## I.    INTRODUCTION

While this case is procedurally unique, the issues it presents are governed by firmly established Federal Arbitration Act ("FAA") principles under Supreme Court precedent.  Arbitration agreements must be enforced according to their terms.

No one disputes that Boddie, a former user of the Uber Driver App, executed a binding individual arbitration agreement.  The unique procedural history here stems from, as the lower court summarized, "the PHRC's [Pennsylvania Human Relations Commission ("PHRC")] administrative maneuvering to re-open an old investigation into Uber . . . brought by . . . Boddie, and seemingly avoid the statute of limitations."  (JA 005).  In July 2018, Boddie initiated an administrative discrimination complaint with Appellee PHRC (dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC")) alleging that his disqualification from using the Uber Driver App in June 2018 was due to sex and age discrimination. The one-year exclusive jurisdiction period for the PHRC to investigate that complaint passed and in March 2022, following its investigation, the PHRC dismissed Boddie's complaint, finding no probable cause to believe discrimination occurred.  Boddie could have requested an administrative hearing to challenge that dismissal but did not.  The EEOC followed suit, closing Boddie's charge and issuing a Notice of Right to Sue in July 2022.  Boddie's next step should have been, if anything, filing any claims in arbitration, pursuant to his Arbitration Provision.

Instead, in January 2023, years after Boddie exhausted his administrative remedies, "the PHRC mysteriously reopened the case," (JA 005) and Boddie purported to file an "amended" complaint in the same case, alleging for the first time class racial disparate impact claims based on the same events from five years before that were alleged in the original complaint.[1]

Fundamentally, as further argued herein, the lower court erred in characterizing the issue before it: "[t]he narrow issue resolved here is whether an employer can use an arbitration agreement with its employee to stop an investigation by the Pennsylvania Human Relations Commission.  No, it turns out."  (JA 005).

The District Court was correct this case involves *a* narrow issue (aside from its employment terminology, which Appellant disputes), but the PHRC's improper state-policy-driven attempt to "investigate" Boddie's facially time-barred new legal claims is a red herring, as state policies and practices cannot discriminate against arbitration agreements or trump FAA requirements.  Under the FAA, the "narrow" issue *in fact* is whether the parties to the operative arbitration agreement agreed to delegate to the arbitrator the objections to arbitration that Boddie raised before the District Court on his motion to dismiss.  They did.

---

[1] At oral argument, the PHRC admitted there is no written document describing such a decision and that the reasons are not provided to any party when such a decision is made, leading the district court to ultimately refer to the PHRC's conduct here as "a pretty questionable agency action."  (Oral Arg. Tr., 8:15-9:16, 58:20, JA 401-02; 451).

2

When the terms of an arbitration agreement clearly and unmistakably delegate issues of arbitrability to an arbitrator, the District Court "may not override the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019). Yet the District Court did just that. It interpreted the Arbitration Provision and determined its enforceability when the contract plainly provides that "disputes arising out of or relating to interpretation, application, enforceability, . . . or validity of this Arbitration Provision, or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." Therefore, the District Court erred in denying Appellant's Petition to Compel Arbitration and granting Appellees' Motions to Dismiss. *See Uber Technologies, Inc. v. Blossomgame*, No. 20-cv-04842, 2021 WL 8317115, at *4 (E.D.N.Y. Oct. 29, 2021) (finding that an identically-worded delegation clause "unmistakably delegates the gateway arbitrability issues to the arbitrator," and granting petition to compel arbitration of state administrative agency discrimination charge). The District Court's order must be reversed so that an arbitrator may resolve Defendant-Appellee Kevin Boddie's challenges to the scope and enforceability of the Arbitration Provision in accordance with the Arbitration Provision as written.

The District Court also erred because, even if it were proper to reach Boddie's contentions about the scope of the arbitration agreement – which it was not – the District Court failed to enforce the agreement pursuant to its plain language. The

District Court read the arbitration agreement as effectively excluding all administrative claims from arbitration (JA 023), when instead the agreement says nothing about administrative complaints specifically before the PHRC and it provides only a *narrow* exception, consistent with Supreme Court authority, for administrative exhaustion that is *required* by law to pursue a claim. (JA 053-54). Boddie's time for required administrative exhaustion, though, has come and gone long ago, both because he had already received the required dismissal notices from the PHRC and EEOC and because, with respect to any state law claims, his claims had already remained pending at the PHRC for more than the one-year exhaustion period under the Pennsylvania Human Rights Act ("PHRA"). 43 P.S. § 962(c)(1) (administrative exhaustion is completed after one year lapses and the PHRC has not entered into a conciliation agreement). Moreover, unlike in *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002), which Appellees heavily relied upon below, Uber did not seek to compel the PHRC itself to arbitrate.

Therefore, longstanding arbitration principles require that the District Court's ruling be reversed and Uber's Petition to Compel be granted.

## II.    JURISDICTIONAL STATEMENT

The District Court had diversity jurisdiction over Uber's federal claim under 28 U.S.C. § 1332. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because Uber appeals from a final order of the United States District Court for the

4

Eastern District of Pennsylvania.  This Court also has appellate jurisdiction under 9

U.S.C. § 16(a)(1)(B) because Uber appeals from an order denying a petition to

compel arbitration under section 4 of the FAA.

## III.   ISSUES PRESENTED

1. Did the Court err in ruling that Uber failed to state a claim upon which relief may be granted where Uber plausibly pled that Boddie executed a binding and enforceable Arbitration Provision containing a clear and unmistakable delegation clause requiring an arbitrator to resolve the arbitrability disputes raised by Defendants-Appellees—*i.e.*, "interpretation, application, enforceability, . . . or validity" of the Arbitration Provision?

   a.  Raised: JA 078 – 80.

   b.  Ruled upon: JA 005 – 26.

2. Did the Court err in ruling that Uber failed to state a claim upon which relief may be granted where Uber plausibly pled that Boddie executed a binding and enforceable Arbitration Provision that covers Boddie's claims against Uber?

   a.  Raised: JA 081 – 83.

5

    b.  Ruled upon: JA 005 – 26.

3.  Did the Court err in ruling that Uber failed to state a claim upon which relief may be granted, despite the existence of a binding and enforceable Arbitration Provision, on the grounds that Boddie has a supposed legal right to prosecute administrative charge of discrimination with the PHRC notwithstanding Boddie's enforceable Arbitration Provision?

    a.  Raised: JA 084 – 86.

    b.  Ruled upon: JA 005 – 26.

4.  Did the Court err in ruling that Uber failed to state a claim upon which relief may be granted, despite the existence of a binding and enforceable Arbitration Provision, on the grounds that the Arbitration Provision was inapplicable in its entirety, and thus its Class Action Waiver did not preclude Boddie's class-wide claims?

    a.  Raised: JA 086 – 87

    b.  Ruled upon: JA 005 – 26

## IV.    STATEMENT OF RELATED CASES

This case has not been before this Court previously.  There are two related proceedings pending before the Pennsylvania Human Relations Commission:

- Kevin Boddie, et al v. Uber Technologies d/b/a Uber; PHRC Case No. 201800207.

- Kevin Boddie v. Uber Technologies, Inc. d/b/a Uber; PHRC Case No. 202316251.[2]

## V.    STATEMENT OF THE CASE

Uber is a software company that develops multi-sided platforms to create digital marketplaces.  Uber's most widely known marketplace, the Uber Rides marketplace, matches individuals in need of local transportation ("riders") with independent transportation providers ("drivers"), who almost always operate locally near their homes.  (JA 072 – 73).  To access the Rides marketplace, riders download Uber's Rider App, while drivers willing to provide transportation services download Uber's Driver App.  (JA 073).  The software in the app enables riders and drivers to connect based on their location.  (*Id.*)  Using Uber's Rider App, riders can connect with available, non-federally regulated drivers nearby who offer a variety of

---

[2] As referenced later herein, there is also a pending complaint brought by the PHRC itself involving the same issues raised in Boddie's purported Second Amended Complaint.  However, Boddie is not a party to that case so it is not listed here as related.

7

transportation options within their local communities. (*Id.*) Uber's Apps are primarily used to facilitate transportation for short-distance trips within one of the many cities across the United States where Uber is available. (*Id.*) Drivers can license Uber's Driver App by entering a platform access agreement (formerly referred to as a license agreement or a technology services agreement) and paying a service fee. (*Id.*)

Appellee Kevin Boddie ("Boddie") first signed up to use Uber's Driver App in December 2016. (JA 073). On December 9, 2016, he entered into a technology services agreement with Rasier-PA, LLC ("Rasier"), a subsidiary of Uber, which contained an arbitration provision (the "Rasier TSA"). (*Id.*) In Boddie's continued use of Uber's Driver App, Boddie then entered into a technology services agreement (the "Portier TSA") with Portier, LLC ("Portier"), a subsidiary of Uber, on February 9, 2017. (*Id.* ¶ 13.) The Portier TSA agreement also contains an arbitration provision (the "Arbitration Provision"). (*Id.*) The Arbitration Provision "applies to all disputes between you and [Portier] or Uber, as well as all disputes between [Portier]'s or Uber's fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns of any of them, including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with [Portier] or Uber, including the formation or termination of the relationship." (JA 073 – 74). It explicitly states that "Uber Technologies, Inc.

8

is an intended third-party beneficiary of this Agreement and the Arbitration Provision. (*Id.*)

The Arbitration Provision expressly provides that it "is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*." *Id.* Further, it specifically provides that Boddie agrees not to present claims on a class, collective or representative basis. (JA 074) ("You and the Company agree to resolve any dispute that is in arbitration and subject to this Arbitration Provision on an individual basis only, and not on a class, collective action, or representative basis ("Class Action Waiver")"). In the Arbitration Provision, the Parties explicitly agreed to arbitrate, without limitation, all "claims arising under the…Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act…and state statutes, if any, addressing the same or similar subject matters, and all other similar federal, state, and/or local statutory and common law claims." (*Id.*) The Arbitration Provision provides that it "survives after the [Portier TSA] terminates." (*Id.*)

Boddie had the opportunity to *opt out* of the Arbitration Provision by submitting an email or letter to the Company within thirty days of his execution of the Arbitration Agreement. (JA 074). The Arbitration Provision stated, in bold print: "**Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration**

**Provision.**" (*Id.*)  Boddie elected *not to opt out* of the Arbitration Provision.[3] (*Id.*)

In June 2018, Boddie became ineligible to use the Uber Driver App.  (JA 075).  On July 16, 2018, Boddie submitted an Employment Discrimination Questionnaire form to the PHRC alleging discrimination on the basis of sex (male) and age (over 40 years old).  (*Id.*)  On July 22, 2020, the PHRC served Uber with a Complaint, PHRC Case No. 201800207, EEOC No. 175202060782, dual-filed with the EEOC, on Boddie's behalf presenting the allegations raised in his Employment Discrimination Questionnaire form.  (JA 075).  Boddie's Complaint did not raise any allegations of race-based discrimination or disparate impact and included no class allegations.  (*Id.*)

On March 30, 2022, the PHRC issued a written finding of no probable cause, dismissing Boddie's Complaint on the basis that it presented insufficient evidence to establish discrimination.  (JA 075).  The dismissal and written finding was signed by the PHRC's Executive Director.  (JA 169-70). The dismissal noted that Boddie was required to seek a preliminary hearing if he desired the PHRC to reconsider its dismissal.  (JA 170). Boddie never sought a preliminary hearing in response and he did not take any other steps to request that his Complaint be reopened or amended by the PHRC.  (JA 075).  On July 7, 2022, the EEOC closed Boddie's charge and adopted the PHRC's written findings.  (*Id.*)  That same day, the EEOC issued Boddie

---

[3] Boddie also did not opt out of the arbitration provision in the Rasier TSA.

a notice of right to sue letter, advising Boddie of his right to file a lawsuit in state or federal court within 90 days. (*Id.*) On October 5, 2022, the deadline for Boddie to file a lawsuit in state or federal court as to his federal claims passed without Boddie filing a lawsuit against Uber. (*Id.*)

Rather than filing a demand for arbitration pursuant to his agreement, approximately six months later on March 29, 2023, Boddie instead purported to file a "Second Amended Complaint" in the same case with the PHRC under the same case number, leading the PHRC to reopen the case that both it and the EEOC had previously dismissed. (JA 075). Boddie now purported to assert class-based claims of race discrimination on a theory of disparate impact for the very first time, relating to the end of his access to the Uber Driver App in 2018. (JA 184 – 192). The purported Second Amended Complaint, unlike his original Complaint, now contained no claims of age or sex discrimination. (*Id.*) On May 30, 2023, Uber filed an Answer to the Second Amended Complaint and a Position Statement stating its objection to the action on the grounds that, *inter alia*, the action was untimely, improper, and subject to arbitration. (JA 197 – 211). By letter dated July 14, 2023, the PHRC informed Uber that it would not discontinue the action for any of the grounds set forth in Uber's Position Statement. (JA 213 – 214). On July 18, 2023, the PHRC sent Uber a Request for Information, seeking sweeping class-wide information pertaining to Boddie's improper and untimely Second Amended

Complaint.  (JA 216 – 218).

In light of Boddie's untimely and improperly raised claims and the PHRC's refusal to discontinue the action, on September 27, 2023, Appellant filed a petition to compel arbitration against Boddie in the United States District Court for the Eastern District of Pennsylvania.  (JA 033 – 69).  The PHRC was not named as a defendant in the action.  (*Id.*)  On or around November 1, 2023, the PHRC filed a charge of discrimination against Uber in its own name separate from Boddie's charge of discrimination in Case No. 201800207.  PHRC's charge of discrimination alleged charges of class-based race and national origin discrimination identical to those contained in Boddie's Second Amended Complaint in Case No. 201800207. (JA 273; 406).

On November 22, 2023, the PHRC moved to intervene as a defendant in the action to compel arbitration that Uber filed against Boddie and attached a proposed motion to dismiss Uber's petition to compel arbitration to its motion to intervene. (JA 219 – 264).  Uber opposed the PHRC's motion to intervene.  (JA 265 – 278). On May 1, 2024, after obtaining counsel, Boddie filed a motion to dismiss Uber's petition to compel arbitration.  (JA 285 – 305).  Uber opposed Boddie's motion to dismiss.  (JA 367 – 377).

On June 12, 2024, oral argument was held on all pending motions.  On August 23, 2024, the court granted the PHRC's motion to intervene as a defendant and

granted Appellees' motions to dismiss. (JA 005 - 26). It held, in relevant part, that Uber's petition to compel arbitration failed to state a claim upon which relief may be granted and that the Arbitration Provision did not encompass the claims in Boddie's Second Amended Complaint. This appeal follows from that order.

## VI.   STANDARD OF REVIEW

This Court has plenary review over the District Court's order granting the Appellees' motions to dismiss for failure to state a claim. *Doe v. University of Sciences*, 961 F.3d 203, 208 (3d Cir. 2020). Likewise, this Court has plenary review over questions of law concerning the applicability and scope of arbitration agreements. *Cronin v. CitiFinancial Servs., Inc.*, 352 F. App'x 630, 634 (3d Cir. 2009) (citations omitted).

## VII.   SUMMARY OF ARGUMENT

Uber respectfully submits that the District Court erred when it declined to enforce the Arbitration Provision and entered its decision to grant Appellees' motions to dismiss Appellant's petition to compel arbitration.

First, the District Court erred in denying Appellant's petition to compel arbitration by determining issues of arbitrability that the parties expressly delegated to an arbitrator. Appellees argued that Boddie's claims were not covered by the scope of the Arbitration Provision and that they could not be arbitrated as a matter of law. These disputes regarding arbitrability must be resolved by an arbitrator in

accordance with the Arbitration Provision's delegation clause, which provides that "disputes arising out of or relating to interpretation, application, enforceability, . . . or validity of this Arbitration Provision, or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." (JA 060).

Uber sufficiently alleged the existence of the Arbitration Provision and this delegation clause (which Appellees did not contest) and the District Court committed reversible error by overriding Uber's contractual right to have the issue of arbitrability decided by an arbitrator. It was improper for the District Court to do so, even if the District Court believed the arbitrability claim to be wholly groundless.

Moreover, even assuming the District Court decides the issue of arbitrability, it erred in holding that Boddie's discrimination claims are not covered by the Arbitration Provision when it expressly covers "disputes arising out of or related to your relationship with the Company, including termination of the relationship." (JA 060). The District Court incorrectly concluded that the claims are not covered because the Arbitration Provision allows Boddie to exhaust his administrative remedies. But Boddie had *already* exhausted any administrative remedies he possibly could have relating to the end of his contractual relationship with Uber, which was in June 2018, making it now *years* after the 300-day filing period for any EEOC claims and 180-day filing period for any PHRC claims arising out of that

event or Boddie's relationship with Uber.

The District Court also committed reversible error in relying upon the fact that Boddie also has a "legal . . . right to file an administrative charge of discrimination" notwithstanding his Arbitration Provision as a basis for granting the motions to dismiss and denying the petition to compel arbitration. (JA 026). Not only did the District Court commit error in so ruling by interpreting and applying the terms of the Arbitration Provision in violation of the delegation clause, but the District Court's substantive analysis on this issue was incorrect. Here, the District Court interpreted the Arbitration Provision's language protecting the right to file administrative charges necessary for exhaustion purposes to protect Boddie's "legal…right to file an administrative charge of discrimination." Here, however, the charge Boddie filed that Uber seeks to arbitrate plainly was *not* necessary for administrative exhaustion purposes, because that had already occurred by operation of law. Moreover, Boddie's legal right to file the Second Amended Complaint, if any, is immaterial to the issue here. Even if the filing itself was deemed necessary, the fact remains that Boddie's Second Amended Complaint *remains filed* with the PHRC and Uber never sought to have the district court retroactively invalidate the entire filing itself; rather Uber moved to compel Boddie's attempt to *adjudicate* those claims, if any, to the arbitral forum.

The FAA requires arbitration agreements to be enforced as written, including

15

provisions delegating issues of arbitrability to arbitrators where, as here, they are clear and unmistakable. This Court should reverse the District Court's decision denying Uber's petition to compel arbitration because it failed to enforce the Arbitration Provision's terms as written requiring arbitration of the arbitrability issues or, alternatively, Boddie's claims arising out of his relationship with Uber.

## VIII. ARGUMENT

### A.    Boddie's Arbitration Provision is Governed by the FAA, Which Requires Arbitration Agreement Terms to be Enforced As Written

Congress enacted the FAA in response to judicial hostility to arbitration and to ensure that arbitration agreements are enforced according to their terms. *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 232-33 (2013). The FAA declares a liberal policy favoring enforcement of arbitration agreements. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621, 1644 (2018); *Palcko v. Airborne Express, Inc,* 372 F.3d 588, 595 (3d Cir. 2004). Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The Third Circuit has recognized that where parties to an arbitration agreement have "made the bargain to arbitrate . . . [they] should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *See Palcko*, 372 F.3d at 595 (quoting *Mitsubishi Motors Corp. v.*

16

*Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).    Here, the parties'
Arbitration Provision is indisputably governed by the FAA.

First, the Arbitration Provision expressly states that it is governed by the FAA:
"This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1
et seq. (the "FAA")." (JA 143).  This is sufficient to invoke the FAA.  *See Buckeye
Check Cashing, Inc., v. CardegnaI,* 546 U.S. 440, 442-43 (2006) (FAA preempted
state law where it provided that it was governed by the FAA).

Likewise, the Arbitration Provision "involves commerce" as defined under
the FAA.  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (the term
"involving commerce" under the FAA is broadly interpreted).  Uber's Apps are
available for riders and drivers to use in cities across the United States, and Boddie's
use of the Driver App to generate leads for riders involves commerce sufficient for
the FAA to apply.  (JA 093 - 94; Chinchilla Decl., ¶ 5). The Third Circuit has
recognized that drivers using the Uber App are covered by the FAA.  *Singh v. Uber
Techs., Inc.*, 67 F.4th 550, 553, 560 (3d Cir. 2023).

Accordingly, the Arbitration Provision is governed by the FAA and federal
law preempts all otherwise applicable or conflicting state laws.  *Preston v. Ferrer*,
552 U.S. 346, 353 (2008); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In
enacting § 2 of the [FAA], Congress . . . withdrew the power of the states to require
a judicial forum for the resolution of claims" subject to arbitration).

17

**B.    Uber Stated a Claim Upon Which Relief May Be Granted Because Uber Plausibly Alleged Facts Satisfying The Threshold Requirements For An Order Compelling Arbitration**

To survive a motion to dismiss a petition to compel arbitration, the non-moving party must plead sufficient facts to show the plausible existence of a valid arbitration agreement that covers the dispute between the parties. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).  In ruling on a motion to dismiss, the court must accept all factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241, 245 (3d Cir. 2012).  The court's role is "strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Nelson v. Brown*, Civ. A. No. 17-cv-3232, 2018 WL 1933289, *3 (E.D. Pa. Apr. 24, 2018) (internal citations omitted).  In so doing, the court applies a presumption of arbitrability and shall not deny an order compelling arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

In determining whether an arbitration agreement must be enforced, a court's inquiry is limited to deciding whether (1) there is a valid agreement to arbitrate between the parties; and (2) the dispute in question falls within the scope of that agreement. *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 83-84 (2002).  However,

where an arbitration agreement contains a delegation clause, the court is limited to deciding the first issue. *Henry Schein*, 586 U.S. at 67-68. It is well settled that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010). Thus, when there is "clear and unmistakable evidence" of the parties' intent to delegate arbitrability to an arbitrator, courts may not decide on arbitrability. *See Foresta v. Airbnb, Inc.*, No. 2:23-cv-01379, 2024 WL 329524 at *7 (E.D. Pa. Jan. 29, 2024). Moreover, "courts cannot decide threshold questions of arbitrability 'unless a party challenge[s] the delegation clause [specifically] and the court concludes that the delegation clause is not enforceable.'" *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (internal citation omitted).

Here, Uber adequately alleged in its Petition to Compel Arbitration (and submitted a copy of the Arbitration Provision establishing) that Boddie entered into an arbitration agreement that explicitly covered "all disputes between you and [Portier] or Uber." (JA 060). The Arbitration Provision also named Uber as an intended third-party beneficiary as it expressly covers claims against Portier's "parents" and Portier is Uber's subsidiary. (JA 35 – 36; ¶¶ 10 – 18). *See John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 59-61 (2d Cir. 2001) (permitting non-signatory third party beneficiary to compel arbitration against signatories of

arbitration agreement). Indeed, the existence of a valid agreement to arbitrate between Uber and Boddie is not in dispute. (JA 019).

Uber also adequately alleged that the Arbitration Provision contained a clear and unmistakable delegation clause, providing that "disputes arising out of or relating to interpretation, application, enforceability, revocability or validity of this Arbitration Provision, or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." (JA 060). Even assuming the delegation clause is not enforceable, Uber adequately alleged that Boddie's alleged employment discrimination claims arise out of his "relationship with Portier or Uber, including the formation or termination of the relationship." (*Id.*)

Uber adequately alleged facts establishing the threshold issues requiring the District Court to compel arbitration. But the District Court ignored the above terms in violation of the FAA. As a result, it erroneously dismissed this matter, denying Uber the benefit of its agreement with Boddie to have an arbitrator decide arbitrability, or alternatively, the merits of Boddie's claims as required by the FAA.

### C. The District Court Failed to Enforce the Delegation Clause Requiring Arbitration of Disputes Regarding "Interpretation, Application, Enforceability…or Validity of Th[e] Arbitration Provision"

#### 1. Under the FAA, a Court May Not Decide on an Arbitrability Dispute If It is Clearly and Unmistakably Delegated to an Arbitrator

While courts are ordinarily tasked with ruling on a dispute's arbitrability, they

20

expressly cannot do so when "the parties clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Communs. Workers of Am.,* 475 U.S. 643, 649 (1986). In such cases, the court instead examines the underlying contract to determine whether the parties agreed to commit questions of enforceability or arbitrability to the arbitrator. *Jackson*, 561 U.S. at 70; *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144-45 (3d Cir. 2022) (reversing District Court's denial of motion to compel arbitration on the basis that arbitration agreement contained a valid and enforceable delegation clause). Where there is a clear and unmistakable clause delegating the issue of arbitrability to an arbitrator, as there is here, it must be enforced irrespective of the parties' or the trial court's position regarding whether the claim at issue should be arbitrated. *See Zirpoli*, 48 F.4th, at 144 (holding "the enforceability of the delegation clause is not determined by the potential invalidity of the arbitration agreement.").

The Supreme Court has unequivocally held that where there is an enforceable delegation clause, the court "possesses no power to decide the arbitrability issue . . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68. This is because the FAA "does not contain a 'wholly groundless' exception, and [courts] are not at liberty to rewrite the statute . . . [Thus,] when the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the

21

parties' decision as embodied in the contract." *Id.* at 65.

The Eastern District of New York confronted the same issue in *Blossomgame*. *See* 2021 WL 8317115, at *4 (holding that the language of the parties' arbitration agreement "clearly evinced the parties' intent to submit arbitration clause interpretation to the arbitrator."). There, the court granted Uber's motion compelling defendant – who had filed a complaint with the New York State Division of Human Rights alleging discrimination – to have those claims adjudicated in arbitration under the terms of the parties' arbitration agreement rather than by the state agency. *Id.* at 6.

Appellees' arguments that Boddie's claims are not arbitrable improperly "confuses the question of who decides arbitrability with the separate question of who prevails on arbitrability." *Henry Schein, 586* U.S. at 71. Those arguments required the trial court to interpret and apply the scope of the Arbitration Provision and to determine the Arbitration Provision's enforceability and validity.

Because these arbitrability issues are clearly and unmistakable delegated to an arbitrator, the trial court was without power to rule on those issues and it committed reversible error in doing so.

22

> **2.    The District Court Erred in Deciding the Arbitrability Dispute Regarding the Arbitration Provision's Enforceability and Validity**

> **a.    Appellees failed to properly challenge the Arbitration Agreement's delegation clause.**

The District Court failed to even address the delegation clause in its written opinion. This is not a surprise because at oral argument, the District Court expressed skepticism about its relevance:

> I mean, a usual delegation question is, you know, we're going to arbitrate all issues arising out of this contract or something, right. I mean, that's the usual – and does this dispute arising out of this contract or doesn't it? That's the usual delegation issue. This is a little different.

(JA 444 – 45). The District Court was wrong to disregard the delegation clause's relevance.  The challenges to Uber's petition to compel arbitration went directly to the application and interpretation of the Arbitration Provision as it concerned Boddie's underlying claims.

In addition to the District Court's misunderstanding on arbitrability issues, it should have enforced the delegation clause because neither the PHRC nor Boddie effectively challenged the enforceability or validity of the delegation clause.  "A court cannot reach the question of the arbitration agreement's enforceability unless a party challenged the delegation clause and the court concludes that the delegation clause is not enforceable." *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018).  To successfully contest the enforceability of a delegation clause, a party must

at least reference the provision in its opposition to a motion to compel arbitration. *Id.*

In its motion to dismiss, the PHRC concedes that "[it] does not challenge the enforceability of the entire agreement, it simply challenges the notion that a charge of discrimination filed before it is subject to the [Arbitration Provision]." (JA 258). This "challenge" goes not to the enforceability of the delegation clause – nor any other aspect of the Arbitration Provision – but instead to the interpretation and application of the Arbitration Provision, an issue that Boddie and Uber agreed to delegate to an arbitrator. While the PHRC sought to challenge the delegation clause by citing to *AT&T Techs.*, 475 U.S., at 649, its attempt was unavailing. *AT&T Techs.* involved a delegation clause that itself expressly carved out issues involving claims that are not covered by the agreement. *See id.* at 645. In other words, it was not a delegation to the arbitrator to decide whether any given claim is covered by the agreement; an arbitrator was only to decide interpretation/performance issues for covered claims, not those "excluded from arbitration by other provisions of this contract." *Id.* Here, in contrast, the delegation clause contains no such carve-out: the delegation clause applies to all "disputes arising out of or relating to interpretation, application, enforceability, revocability or validity of this Arbitration Provision, or any portion of the Arbitration Provision." (JA 060).

For his part, Boddie improperly challenged the enforceability of the

24

delegation clause for the first time in passing at oral argument.  (JA 451 – 52) ("In case it's not clear, we do challenge the delegation clause for the same reasons that we say that it's improper for Boddie's charge to be moved to arbitration.  And because we challenged the delegation clause specifically as being unenforceable and void under Supreme Court precedent, that's an issue that this Court can decide.").  Boddie's motion to dismiss filed in opposition to Uber's petition to compel arbitration, however, does not specifically challenge – nor even reference – the delegation clause.  As a result, any challenges specific to the delegation clause were waived.  *See Tomasko v. Ira H. Weinstock, P.C.*, 357 F.App'x 472, 479 (3d Cir. 2009) ("specific objections . . . raised for the first time at oral argument in the District Court have been waived.").

### b.    Any challenge to the delegation clause would have been meritless.

Even if the PHRC or Boddie had raised a proper challenge to the enforceability of the delegation clause, any such challenge would have been meritless.  The Arbitration Provision's delegation clause clearly and unmistakably provides that "disputes arising out of or relating to interpretation, application, enforceability, revocability or validity of this Arbitration Provision, or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge."  (JA 060).

The Ninth Circuit enforced this very same delegation clause in Uber's

Technology Services Agreements, holding that "[t]he delegation provisions clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims except challenges to the class, collective, and representative action waivers in the 2013 Agreement." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). The Third Circuit has since agreed: "In the presence of a delegation clause, we 'cannot reach the question of the arbitration agreement's enforceability' unless the clause itself 'is not enforceable.'" *Singh,* 67 F.4th at 563 (rejecting challenges to Uber's delegation clause). Therefore, any question as to the enforceability and validity of the Arbitration Provision and whether it applies to this dispute has been delegated to, and must be decided by, the arbitrator.

Indeed, courts around the country have recognized the enforceability and validity of the delegation clause in various versions of Uber's Arbitration Provision. *Camilo v. Uber Techs., Inc.*, No. 17-cv-9598, 2018 WL 2464507, at *8 (S.D.N.Y. 2018); *Richemond v. Uber Techs., Inc.*, 263 F. Supp. 3d 1312, 1317 (S.D. Fla. 2017) ("Accordingly, this Court finds that there is 'clear and unmistakable evidence' that Richemond 'agreed to arbitrate arbitrability.'"); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 894 (N.D. Ill. 2016) ("Here, by contrast, the existence of a delegation provision requires the submission of this question of the enforceability of the collective arbitration prohibition, like any other question of the Agreement's enforceability, to the arbitrator."); *Bruster v. Uber Techs. Inc.*, No. 15-cv-2653, 188

F. Supp. 3d 658, 664 (N.D. Ohio 2016) ("The June 2014 delegation provision delegates issues of arbitrability to the arbitrator, not the Court."); *Zawada v. Uber Techs., Inc.*, No. 16-cv-11334, 2016 WL 7439198, at *1 (E.D. Mich. 2016) ("Because the arbitration provision contains a clear and unmistakable delegation provision by which the parties agreed to even arbitrate whether the arbitration controversy is arbitrable, the Court must compel arbitration."); *Varon v. Uber Techs., Inc.*, No. 15-cv-3650-MJG, 2016 WL 3917213, at *2 (D. Md. 2016) ("The parties clearly and unmistakably agreed to arbitrate the threshold issue of arbitrability."); *Suarez v. Uber Techs., Inc.*, No. 8:16-CV-166-T-30MAP, 2016 WL 2348706, at *4 (M.D. Fla. 2016), *aff'd*, 688 F. App'x 777 (11th Cir. 2017) ("[A]djudication of Plaintiffs' attacks on the Arbitration Provision should be left to the arbitrator because it is clear and unmistakable that the parties agreed to arbitrate arbitrability."); *Sena v. Uber Techs., Inc.*, No. CV-15-02418-PHX-DLR, 2016 WL 1376445, at *4 (D. Ariz. 2016) ("Given the plain language of the Delegation Clause, the Court finds that the parties clearly and unmistakably intended to arbitrate questions of arbitrability.").

Accordingly, to the extent that the District Court's ruling found the Arbitration Provision's delegation clause to be unenforceable, such ruling was in error.

4914-7573-8886

###### 3.    The District Court Erred in Deciding the Arbitrability Dispute Regarding the Arbitration Provision's Interpretation and Application

The District Court overstepped its role by deciding whether Boddie's claims are covered by the Arbitration Provision because that issue involves the delegated issues of interpreting and applying the Arbitration Provision's terms. In its motion to dismiss, the PHRC argued that "The language of the [Arbitration Provision] is plain.  Boddie and Uber agreed to exempt from arbitration a particular type of controversy: the filing of administrative anti-discrimination complaints that are required for exhaustion of administrative remedies with agencies like the [PHRC]. There is *no doubt* that the arbitration agreement does not cover administrative filings like Boddie's." (JA 257) (emphasis in original).  In short, the PHRC's argument in support of dismissal goes to *interpreting* the scope of the Arbitration Provision and *applying* its terms to the underlying controversy.

Boddie advances a similar argument: "A simple review of the Arbitration [Provision]…establishes that Boddie's amended administrative complaint with the [PHRC] is explicitly carved out of the scope of the Arbitration [Provision]; the Petition must be dismissed." (JA 302).

The plain language of the Arbitration Provision, however, is clear and unmistakable: all disputes including those "arising out of or relating to **interpretation, application,** enforceability, revocability or validity of this

28

Arbitration Provision…shall be decided by an Arbitrator and not by a court or judge." (JA 060) (emphasis added). Nevertheless, the District Court held that "the language of Boddie's contract unambiguously limited the scope of disputes subject to compulsory arbitration to *exclude* administrative charges necessary for exhaustion purposes…Because Boddie has both a legal and apparent contractual right to file an administrative charge of discrimination, Uber fails to state a claim." (JA 023; 26) (emphasis in original). In so ruling, the District Court impermissibly "interpret[ed]" and "applie[d]" the terms of the Arbitration Provision in relation to the controversy between Uber and Boddie. But, the FAA requires otherwise regardless of the District Court's position on the dispute. *See Henry Schein,* 586 U.S. at 67-68. The District Court's failure to enforce the delegation clause is reversible error. *Id.*; *see also Med X Change, Inc. v. Enciris Techs. SAS*, No. 8:20-cv-1223-T-33AAS, 2020 WL 6287682, at *4 (M.D. Fla. 2020) ("despite the seemingly plain carveout clause, 'the Court must compel arbitration so that an arbitrator can rule on the threshold issue of arbitrability of claims for [equitable] relief.'") (internal citations omitted); *Jacobs Field Servs. N. Am., Inc. v. Wacker Polysilicon N. Am., LLC*, 375 F. Supp. 3d 898, 914 (E.D. Tenn. 2019) ("Defendant may turn out not to have the right to include the Baker Pass-Through Claim in the Arbitration. Or the Baker Pass-Through Claim may turn out to be time barred, as Plaintiff argues in the Verified Complaint. But because Plaintiff and Defendant clearly and unmistakably delegated

29

gateway decisions of arbitrability to the arbitrator, it is the arbitrator, and not the Court, that must make decisions about arbitrability.").

In other words, it ultimately does not matter at this stage whether Uber, Appellees, or the District Court has the legally correct interpretation of the contours of the arbitration clause and its exceptions. Those are issues Boddie and Uber agreed the arbitrator would decide. *See Leboeuf v. Nvidia Corp.*, 833 Fed. Appx. 465, 466 (9th Cir. 2021) ("Any dispute as to the scope of that agreement, and whether Appellants' claims fall outside the agreement, must be determined by the arbitrator under the License Agreement's delegation clause."); *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 28 (1st Cir. 2021) (following *Henry Schein* and finding that where party seeking to avoid arbitration asserted "that the arbitration agreement and the delegation clause do not apply to his particular claims . . . . the district court erred in not enforcing that agreement according to its own language and in not referring the dispute about whether Bossé's claims are arbitrable to the arbitrator."); *McGee v. Armstrong*, 941 F.3d 859, 866-67 (6th Cir. 2019) (following *Henry Schein* and holding that court could not address party's arguments related to scope of agreement where there was a valid delegation clause); *Coulter v. Experian Info. Sols., Inc.*, No. 2:20-cv-01814, 2021 WL 735726, at *4 (E.D. Pa. 2021) (following *Henry Schein* and explaining "a delegation clause may delegate the issue of whether a particular dispute falls within the scope of the agreement to the arbitrator."); *De Angelis v. Icon*

*Entm't Grp., Inc.*, 364 F. Supp. 3d 787, 794-95 (S.D. Ohio 2019) (arguments regarding whether claims were covered by arbitration provision were for arbitrator to decide). Accordingly, the order dismissing Appellant's petition to compel arbitration should be reversed.

> ### D. The District Court Erred in Interpreting the Arbitration Provision to Find That it Excludes Boddie's Discrimination Claims with the PHRC

> #### 1. The Arbitration Provision Broadly Applies to Any Individual Disputes "Arising Out of or Related to [Boddie's] Relationship with Uber" Including His Individual Discrimination Claims

Even if it were proper for the District Court to decide the arbitrability issues, which it was not, it nevertheless erred in finding that the Arbitration Provision excluded Boddie's PHRC claims. The Arbitration Provision is broad and encompasses all of the following claims:

> [A]ll disputes between You and the Company or Uber, as well as all disputes between You and the Company's or Uber's fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns of any of them, including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical

Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for individual claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims.

(JA 121).

The purported claims in Boddie's Second Amended Complaint – race and national origin discrimination under the PHRA – fall squarely within the Arbitration Provision.  (JA 188 – 91).

### 2. The Arbitration Provision Does Not Exclude Adjudication of All Claims Filed with the PHRC by Allowing for Administrative Exhaustion as Required by Law

The District Court improperly reasoned that the terms of the Arbitration Provision excluded the claims Boddie alleged in his Second Amended Complaint. (JA 023).  Appellees did not deny that Boddie's claims fell within the above defined scope of the Arbitration Provision.  Instead, they argued that Boddie's claims are excluded because the following in the Arbitration Provision allows for the exhaustion of administrative remedies:

Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, **with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any**

**forum other than arbitration.**

(JA 121) (emphasis added).

However, the plain language excludes only those proceedings that are *legally required* for the exhaustion of administrative remedies.  The claims in Boddie's Second Amended Complaint do not belong to this category.

Administrative exhaustion requires filing a charge of discrimination with the PHRC (or equivalent federal agency) and receipt of a notice of right to sue.  *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).  Following the receipt of a notice of right to sue letter, the litigant has ninety days within which to file a lawsuit in court or seek relief in another forum, such as arbitration.  *See Voorhees v. Montgomery Cty. Cmty. Coll.*, 397 F. Supp. 3d 713, 717 (E.D. Pa. 2019).  Failure to exhaust administrative remedies with the PHRC acts as a bar to judicial remedies under the PHRA.  *See Lukus v. Westinghouse Electric Corp.*, 419 A.2d 431, 452 (Pa. Super. 1980).

Administrative exhaustion *also* is satisfied one year after the filing of a complaint with the PHRC and the PHRC has not entered into a conciliation agreement to which the complainant is a party.  At this point, the complainant is free to pursue a judicial remedy.  Standard Pennsylvania Practice 2d § 166:933.  In short, administrative exhaustion occurs via operation of law.  The PHRA does not require every claim filed with the PHRC to proceed through a full PHRC investigation

4914-7573-8886

process to exhaust administrative remedies.

Here, on July 16, 2018, Boddie submitted an Employment Discrimination Questionnaire form to the PHRC alleging discrimination on the basis of sex (male) and age (over 40 years old). (JA 75). On July 22, 2020, the PHRC served Uber with a Complaint, PHRC Case No. 201800207, EEOC No. 175202060782, dual-filed with the EEOC, on Boddie's behalf presenting the allegations raised in his Employment Discrimination Questionnaire form. (*Id.*) Appellant **did not** seek to compel arbitration of this Complaint in accordance with the terms of the Arbitration Provision exempting "proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration." On March 30, 2022, the PHRC issued a written finding of no probable cause, dismissing Boddie's Complaint on the basis that it presented insufficient evidence to establish discrimination. (*Id.*) On July 7, 2022, the EEOC closed Boddie's charge and adopted the PHRC's written findings. (*Id.*) That same day, the EEOC issued Boddie a notice of right to sue letter, advising Boddie of his right to file a lawsuit in state or federal court within 90 days. (*Id.*)

Accordingly, as of July 7, 2022, Boddie had exhausted his administrative remedies and he had until October 5, 2022 to file a lawsuit or demand for arbitration against Uber. He did not do so, and on October 5, 2022, the deadline for Boddie to file a lawsuit in state or federal court passed without Boddie filing a lawsuit or

demand for arbitration against Appellant.

Instead, Boddie attempted to reopen the case by filing the "Second Amended Complaint" with the PHRC on March 29, 2023, purporting to assert class-based claims of race and national origin discrimination, again relating to his usage of the Uber Driver App from 2016 – 2018.  (JA 075).

Appellees argued, and the District Court held, that these new claims were not subject to the Arbitration Provision under the terms of the agreement exempting proceedings that are necessary for the exhaustion of administrative remedies.  The District Court reasoned that "[t]o exhaust a claim of discrimination under the PHRA – the type of claim contained in Boddie's amended complaint – the claim must first be exhausted by filing with the PHRC."  (JA 023).  The District Court ostensibly credited the PHRC's self-serving assertion that the claims in the Second Amended Complaint were properly before the PHRC because they had not yet been administratively exhausted.  (JA 023) ("Although Uber maintains that this amended complaint is improperly before the PHRC, the fact remains that the amended complaint *is* before the PHRC.  It simply does not follow that Uber is entitled to compulsory arbitration of a protected charge because Uber contends, ***against the conclusions of the PHRC***, that the charge was improperly brought.") (emphasis added).

Here, the District Court erred, though, because the PHRC does not determine

administrative exhaustion – exhaustion occurs by operation of law.  The claims in

Boddie's Second Amended Complaint are facially time-barred and there would be

no way, as a matter of law, to resurrect them and suddenly render them timely.  *See*

*Williams v. East Orange Cmty. Charter Sch.*, 396 Fed. Appx. 895, 897-98 (3d Cir.

2010) (affirming District Court's dismissal of claims that plaintiff had not brought

to the attention of the EEOC in her administrative charge); *McIntosh v. White Horse*

*Vill., Inc.*, 176 F. Supp. 3d 480, 482-483 (E.D. Pa. 2016). If his new claims relate

back to his original charge as Appellees apparently contend, exhaustion was

completed as a matter of law because (1) more than one year had passed since the

filing of his original charge of discrimination, and (2) he had received a notice of

right to sue letter.  (JA 075). Boddie had *already* administratively exhausted any

claims he could have ever exhausted and, for reasons only known to him, failed to

vindicate his right to file a timely lawsuit or demand arbitration.

To be clear, Uber does not dispute that the Arbitration Provision excludes

proceedings that must be exhausted under applicable law before pursuing a claim in

a court of law.  Here, however, there were no claims that "*must* be exhausted under

applicable law" because the time has long passed for any exhaustion from events

that occurred in 2018 under applicable Pennsylvania law for Boddie to file any claim

he may have and this cannot be legally cured by any further proceedings at the

PHRC.  (JA 121) (emphasis added).  The claims in the Second Amended Complaint

are either time-barred, and thus not subject to administrative exhaustive requirements as a matter of law, or alternatively, administratively exhausted by operation of law because more than one year has elapsed since the filing of Boddie's charge of discrimination to which these "amended" claims relate. Accordingly, Boddie's claims are subject to the Arbitration Provision and are not exempted by the narrow exclusion in the arbitration agreement for mandatory exhaustion.

Here, Boddie's "right" to file an administrative charge is not implicated at all. He filed multiple charges and no one has argued that the charges themselves should be retroactively vanquished. All that is impacted is in which forum Boddie's claims are adjudicated. As the *Blossomgame* court reasoned when addressing similar facts, albeit involving the New York state anti-discrimination agency instead of the PHRC, "Blossomgame would lose little should he be enjoined from moving forward with the NYSDHR proceeding—indeed, Blossomgame could still bring any claim he may have against Uber, albeit by way of arbitration as agreed upon in the parties' contract. Thus, the balance of the hardships decidedly favors Uber under these circumstances." *Blossomgame*, 2021 WL 8317115, at *6.

Finally, to the extent that the District Court's opinion effectively results in deferring to the PHRC's discretion in its policy making (which the PHRC admitted at oral argument is untethered to any controlling law) to determine whether Boddie can attempt to revitalize a clearly time-barred claim or when Boddie's claim was

37

"exhausted," that was improper. Such a rule would improperly discriminate against arbitration in violation of the FAA. As the Supreme Court has repeatedly held, "even rules that are generally applicable as a formal matter are not immune to preemption by the FAA . . . Section 2's mandate protects a right to enforce arbitration agreements. That right would not be a right to *arbitrate* in any meaningful sense if generally applicable principles of state law could be used to transform 'traditiona[l] individualized . . . arbitration' into the 'litigation it was meant to displace' through the imposition of procedures at odds with arbitration's informal nature." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650–51 (2022) (internal citations omitted). That is, the FAA not only "preempts any state rule discriminating on its face against arbitration—for example, a "law prohibit[ing] outright the arbitration of a particular type of claim," but "the Act also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017). By effectively deferring to the PHRC's policy driven choice to "reopen" Boddie's case and desire to "investigate" legally time-barred claims, rather than adhering to the terms in the agreement that provide an exception only for *legally required* exhaustion, then, the District Court's opinion allows the PHRC to control Appellant's right to arbitrate by virtue of state fiat.

As of July 7, 2022, because exhaustion was completed, Boddie could have

filed his claims in court whether or not the PHRC wanted him to do so.[4]  A requirement for mandatory exhaustion would not have prevented the *filing* of those claims. Similarly, the exhaustion requirement cannot prevent Uber from demanding arbitration of those claims regardless of the PHRC's position.[5]  Any rule to the contrary demands different results only because arbitration is at issue. That rule is preempted by the FAA. *Darrington v. Milton Hershey Sch.*, 958 F.3d 188, 192 (3d Cir. 2020) ("[w]hen considering the Darringtons' state-law PHRA claims, we need not consider whether the PHRA excludes arbitration as an appropriate forum. That is so because the FAA preempts 'any state rule' that facially or covertly prohibits arbitration.") (internal citations omitted).

### E.    The District Court Also Erred in Holding that the Arbitration Provision is Not Enforceable Because Boddie Has a Purported Legal Right to File Discrimination Claims with the PHRC

The District Court also erred in granting Appellees' motions to dismiss, in part, on the basis that "Boddie has both a legal . . . right to file an administrative charge of discrimination[.]"  (JA 026).

### 1.    Boddie is Required to Arbitrate His Individual Discrimination Claims under the FAA and Supreme Court Precedent

Both the FAA and Supreme Court precedent require arbitration of Boddie's

---

[4] The claims would subsequently be dismissed as time-barred.

[5] A party may compel arbitration of claims even if they are not yet filed with a court.

individual claims.  Importantly, the Arbitration Provision specifically states that issues regarding the ***interpretation or application*** of the agreement – including the issue here of whether the agreement excludes the adjudication of discrimination claims by the PHRC – must be delegated to the arbitrator. Where, like here, a delegation clause exists, the Court has no jurisdiction to determine whether or not the claims are within the scope of the Arbitration Provision. The *Schein* court has reiterated that such language requires a court to compel arbitration of issues of scope and arbitrability, even if it believes the argument for arbitrability to be "wholly groundless." *Henry Schein,* 586 U.S. at 68.  The defendant in *Schein* sought to compel arbitration, and the plaintiff asserted that the dispute was outside the scope of the arbitration agreement in question.  *Id.* at 65-66. Even though the agreement had a delegation clause similar to the one at issue here, the district and circuit courts asserted that defendant's argument regarding the scope of the agreement was "wholly groundless," and thus, declined to enforce the delegation clause in the agreement. *Id.* at 67. The Supreme Court reversed, holding that no "wholly groundless" exception exists and that such would be inconsistent with both the FAA and Supreme Court precedent:

> We must interpret the Act as written, and the Act in turn requires that we interpret the contract as written. When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that

> the argument that the arbitration agreement applies to a
> particular dispute is wholly groundless.

*Id.* at 68 - 69. ("a court may not decide an arbitrability question that the parties have delegated to an arbitrator.").

Uber's argument that Boddie's discrimination claims must be arbitrated is not "wholly groundless;" in fact, Uber's interpretation of its agreement is correct. There is no dispute that the Arbitration Provision calls for adjudication of discrimination claims in arbitration. Appellees argue that discrimination claims may be adjudicated by government agencies, because the Arbitration Provision provides that a party may file a claim with a federal government agency and exempts proceedings necessary for administrative exhaustion:

> Furthermore, nothing in this Arbitration Provision
> prevents you from making a report to or filing a claim or
> charge with the Equal Employment Opportunity
> Commission, U.S. Department of Labor, Securities
> Exchange Commission, National Labor Relations Board,
> or Office of Federal Contract Compliance Programs, and
> nothing in this Agreement or Arbitration Provision
> prevents the investigation by a government agency of any
> report, claim or charge otherwise covered by this
> Arbitration Provision. Nothing in this Arbitration
> Provision shall be deemed to preclude or excuse a party
> from bringing an administrative claim before any agency
> in order to fulfill the party's obligation to exhaust
> administrative remedies before making a claim in
> arbitration.

(JA 250). Despite this language, the District Court concluded that "Uber's requested relief would prevent the PHRC from even *investigating* Boddie's amended

complaint." (JA 021). Not so.

There is no inconsistency in the Arbitration Provision permitting the filing of a charge of discrimination claim, while prohibiting the PHRC from adjudicating that claim under the unique circumstances here. Where no arbitration agreement applies, when a discrimination claim is filed with the PHRC, the PHRC has three options: (1) pursue its own adversarial action (which the PHRC is actively doing at the moment against Uber); (2) upon a finding of probable cause, order a public hearing to adjudicate the claim (*see* 16 Pa. Code. § 42.101); or (3) dismiss the complaint (without prejudice to the claimant's right to pursue the discrimination claim in court). The Supreme Court explained the nuance between the PHRC's adjudicatory and prosecutorial role in *Preston,* 552 U.S. at 358-59. There, the court reasoned that an agency may act as an impartial arbiter of a dispute, unless it is acting as a prosecutor or pursing an enforcement action in its own name. *Id.*

The District Court, however, cites *Preston* in support of the contention that the Arbitration Provision *cannot* be enforced because doing so would prevent the PHRC from completing its investigation and making a determination as to whether it should initiate judicial proceedings. (JA 024). The District Court's opinion, however, is founded upon a misunderstanding of the PHRC's investigatory authority. As set forth above, a PHRC investigation into allegations of discrimination is not specifically handcuffed to any individual complainant and here

42

the PHRC has acknowledged it has filed its own Commissioner's Charge against Appellant. The fact the PHRC chose not to do so sooner, or chose not to investigate for the many years Boddie's Complaint was pending with the agency, does not mean that the compelling arbitration here results in the PHRC being unable to investigate claims.

Relatedly, the Court's reliance on *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20 (1991) is unavailing to support dismissal of Uber's petition to compel arbitration. The District Court ostensibly reads *Gilmer* as standing for the proposition that "private judicial actions…are subject to compulsory arbitration, but [administrative charges of employment discrimination] are not." (JA 020). This reading is incorrect. The FAA and Supreme Court precedent require enforcement of the terms of the Arbitration Provision as written. *Henry Schein,* 586 U.S. at 68. The Arbitration Provision, as written, *does not* exempt *all* administrative charges of employment discrimination from arbitration, it only exempts "administrative claim[s] before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration." (JA 122).

### 2. Arbitration of Boddie's Claims Does Not Prevent the PHRC From Investigating Discrimination

The PHRC has admitted that it filed its own charge levying the same claims against Uber that appear in Boddie's Second Amended Complaint, (JA 412), approximately one month after Uber filed this petition to compel arbitration, and

nothing except its own apparent change of mind prevented it from doing so sooner or conducting any investigation it now claims it wants to do during the *several years* Boddie's complaint remained pending before the PHRC ultimately dismissed it. Uber has not sought to compel arbitration in the PHRC's own action, which remains open. Thus, compelling arbitration of Boddie's claims would not limit the PHRC's investigative authority in any way.

Rather, the only "limitation" that compelling arbitration would potentially impose on the PHRC is illusory and improper. Nothing prevented the PHRC from acting appropriately sooner prior to administrative exhaustion if it had wished to investigate events from long ago at the time. Uber's rights under the FAA cannot be held subordinate to the PHRC's newfound desire to expand the exhaustion period contrary to the PHRA. Appellees' contention violates not only the PHRA, but it also violates the FAA because a state law cannot discriminate against arbitration even if it allegedly furthers state public policy. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-44 (2011).

Regardless, in this case, public policy is not furthered by Appellees' position that the PHRC may unilaterally extend statutorily established exhaustion and limitations periods. As this Circuit recognizes, statutes of limitation serve compelling public policy interests, including but not limited to protecting defendants from the "unfair surprise of stale claims." *Kreiger v. United States*, 539 F.2d 317,

322 (3d Cir. 1976).  It is the PHRC's apparent attempt to vitiate this principle, as the District Court surmised the basis for the PHRC's "unusual" actions here, not its actual right to investigate them.

In 2018, Boddie initiated proceedings before the PHRC by alleging discrimination on the basis of age and sex arising from his usage of the Uber Driver App between 2016 and 2018.  In 2022, having exhausted his administrative remedies, he received a notice of right to sue as to those claims, but took no action and allowed his rights to lapse.  Almost a year later, in 2023, Boddie "amended" his Complaint to add new claims of race and national origin discrimination arising out of the same set of facts – now up to seven years old – as his original complaint.

Were Boddie to have raised these claims in any other manner – i.e. in a lawsuit, demand for arbitration, or even in a separate PHRC charge, rather than an "amendment" to his prior charge – they would be rejected as untimely and barred. The District Court's erroneous conclusion that Boddie's Second Amended Complaint is simply an "[attempt] to exhaust those claims before the PHRC" carries greater consequences beyond a violation of the FAA.  It provides individual litigants – and the PHRC itself – a roadmap for salvaging claims that would otherwise be untimely or waived.  The District Court even acknowledged the likelihood of this being the PHRC's true goal:

> Requiring Boddie to arbitrate his charge would circumscribe the scope of the PHRC's investigation into

45

> Uber's background check policy. Boddie's charge was first brought in 2018, and the PHRC's separate charge against Uber was brought in 2023. Due to the operative statute of limitations, the withdrawal of Boddie's charge from the PHRC would prevent the PHRC from addressing any alleged discrimination that occurred in the five remaining years. Uber avers, credibly, that the PHRC is circumventing the statute of limitations by improperly re-opening Boddie's original charge to expand its investigation to cover five additional years.

(JA 014).

Despite its seeming awareness that doing so would allow the PHRC to "circumvent" the PHRA's statute of limitations, the District Court nevertheless denied Appellant's petition to compel arbitration. Public policy counsels in favor of protecting the statute of limitations enacted by the Pennsylvania legislature and against endorsing a mechanism by which to avoid it. The PHRC's investigative authority remains unscathed. Accordingly, the District Court's denial of Appellant's petition to compel arbitration should be reversed.

### F.    The District Court Erred in Failing to Enforce the Class Action Waiver

As discussed *supra*, Boddie's Second Amended Complaint raised putative claims of race and national origin discrimination on a class basis. Because Boddie had already exhausted his administrative remedies with respect to claims under the PHRA, Appellant sought an order from the District Court directing Boddie to proceed with his claims, if any, in arbitration in accordance with the terms of the

46

arbitration agreement. Those terms require such claims to be brought on an individual basis only: "You and the Company agree to resolve any dispute that is in arbitration and subject to this Arbitration Provision on an individual basis only, and not on a class, collective action, or representative basis ("Class Action Waiver")". (JA 062).

It is firmly established that arbitration agreements requiring arbitration on an individual basis precludes class action claims. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (the FAA protects class and collective action waivers "pretty absolutely."). Class claims are ill-suited for arbitration because it "sacrifices . . . the benefits of private dispute resolution: lower costs, greater efficiency and speed" and it lacks "multilayered review . . . 'mak[ing] it more likely that errors will go uncorrected." *Concepcion*, 563 U.S. at 348-49; *Viking River,* 596 U.S. at 662. Thus, "unless there is a contractual basis for concluding that the party agreed" to submit to class arbitration, parties "cannot be compelled to submit their dispute to class arbitration." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684-87 (2010). Boddie's class action claims cannot be arbitrated and they must be dismissed because Boddie and Uber unequivocally agreed through the Class Action Waiver to not arbitrate on a class basis. (JA 062).

Relying on its own analysis that Boddie's Second Amended Complaint was not subject to the arbitration agreement, the District Court reasoned in a footnote

that this class action waiver was inapplicable, as it was merely one part of the Arbitration Provision, which the District Court found inapplicable in its entirety. (JA 019). For the reasons discussed *supra*, the District Court erred in ruling (1) on the interpretation, application, enforceability, and validity of the Arbitration Provision in the first place, in contravention of the parties' agreement to delegate these issues to an arbitrator; and (2) that the Arbitration Provision did not apply to Boddie's Second Amended Complaint. Accordingly, the District Court's refusal to enforce the Arbitration Provision's class action waiver – which is premised entirely on the District Court's own (erroneous) ruling on the scope and enforceability of the Arbitration Provision – should be reversed.

## IX.    CONCLUSION

For the foregoing reasons, this Court should reverse the District Court decision granting the Appellees' motions to dismiss Uber's petition to compel arbitration and order that the District Court enter an order compelling Boddie to arbitrate his claims against Uber on an individual basis only.

4914-7573-8886

Respectfully submitted,

_s/ William J. Simmons_

William J. Simmons, Bar No.
206860 wsimmons@littler.com
Kevin Frankel, Bar No. 327459
kfrankel@littler.com
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
Telephone:  267.402.3000 Facsimile:
267.402.3131

Date: January 16, 2025

_Attorneys for Plaintiff-Appellant,_

UBER TECHNOLOGIES, INC.

4914-7573-8886

## I.    CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, William Simmons, counsel for Uber Technologies, Inc., certify, pursuant to Local Appellate Rule 28.3(d) that I am a member in good standing of the Bar of the Court of Appeals for the Third Circuit.  I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(7), and Local Appellate Rules 31.1(c) and 32.1(c), that the foregoing Brief of Appellee is proportionately spaced and has a typeface of 14-point Times New Roman, contains 11,198 words (not counting portions excluded from the word count by Rule 32(f)), and that the text of the electronic brief is identical to the text of the paper copies.  I further certify, pursuant to Local Appellate Rule 31.1(c), that Windows Defender has been run on this Brief before filing and that no virus was detected.

*s/ William Simmons*

Date: January 16, 2025                    William Simmons

4914-7573-8886

## II.   **CERTIFICATE OF SERVICE**

I, William Simmons, counsel for Appellant Uber Technologies, Inc. certify that on January 16, 2025 I filed the foregoing Brief of Appellant via the Court's CM/ECF system, causing a Notice of Docket Activity and a copy of the filing to be served upon the following counsel of record who are registered CM/ECF users:

Chelsea L. Edwards
Justice at Work
990 Spring Garden Street, Suite 300
Philadelphia, PA 19123

Hannah R. Fishman
Jarrod D. McAllister
Christopher M. McNerney
Outten & Golden
685 Third Avenue, 25th Floor
New York, NY 10017

Ossai Miazad
Pooja P. Shethji
Outten & Golden
1225 New York Avenue NW, Suite 1200b
Washington, DC 20005

*Attorneys for Appellee Kevin Boddie*

Meredith A. Millard
Morgan G. Williams
Pennsylvania Human Relations Commission
301 Fifth Avenue
Piatt Place, Suite 390
Pittsburgh, PA 15222

4914-7573-8886

Dana D. Prince
Pennsylvania Human Relations Commission
110 N. 8th Street, Suite 501
Philadelphia, PA 19017

*Attorneys for Appellee Pennsylvania Human Relations Commission*

Pursuant to LAR 31.1 and the May 2, 2023 standing order, seven identical

hard copies of this Brief will be sent to the Clerk of the Court via Federal Express

within five days of the electronic filing:

Office of the Clerk
United States Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

*s/ William Simmons*
Date: January 16, 2025                    William Simmons

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## Case No. 24-2772

---

## UBER TECHNOLOGIES, INC.,

*Plaintiff-Appellant,*
v.

## KEVIN BODDIE; PENNSYLVANIA HUMAN RELATIONS COMMISSION,

*Defendants-Appellees.*

---

## JOINT APPENDIX VOLUME I
## (JA 001 – 026)

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No. 2:23-cv-03780

---

William J. Simmons, Bar No. 206860
wsimmons@littler.com
Kevin B. Frankel, Bar No. 327459
kfrankel@littler.com
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
Telephone:  267.402.3000
Facsimile:   267.402.3131

*Attorneys for Plaintiff-Appellant,*
UBER TECHNOLOGIES, INC.

## APPENDIX OF PLAINTIFF/APPELLANT
## TABLE OF CONTENTS

### VOLUME I (Appended to Brief)

|     |                                                                                          | Page(s) |
|-----|------------------------------------------------------------------------------------------|---------|
| 1.  | Notice of Appeal (ECF No. 47)                                                             | JA 001  |
| 2.  | District Court Order Dated August 23, 2024 Granting Defendants' Motion to Dismiss (ECF No. 46) | JA 003  |
| 3.  | District Court Opinion Dated August 23, 2024 Granting Defendants' Motion to Dismiss (ECF No. 45) | JA 005  |

### VOLUME II

|     |                                                                                          | Page(s) |
|-----|------------------------------------------------------------------------------------------|---------|
| 4.  | Civil Docket for Case #: 2:23-cv-03780                                                    | JA 027  |
| 5.  | Petition to Compel Arbitration (ECF No. 1)                                                | JA 033  |
| 6.  | Memorandum of Law in Support of Petition to Compel Arbitration (ECF No. 3)                | JA 070  |
| 7.  | Declaration of Daniel Chinchilla (ECF Nos. 3-1 through 3-3)                               | JA 092  |
| 8.  | PHRC's Motion to Intervene as Defendant (ECF No. 7)                                       | JA 219  |
| 9.  | Plaintiff's Brief in Opposition to the Commonwealth of Pennsylvania, Human Relations Commission's Motion to Intervene (ECF No. 10) | JA 265  |
| 10. | Defendant-Intervenor's Reply to Plaintiff's Opposition to Motion to Intervene (ECF No. 11) | JA 279  |

| 11. | Defendant Kevin Boddie's Motion to Dismiss Plaintiff Uber's Motion to Compel Arbitration (ECF No. 30) | JA 285 |
|---|---|---|
| 12. | Defendant Kevin Boddie's Memorandum in Support of the Commonwealth of Pennsylvania, Human Relations Commission's Motion to Intervene (ECF No. 31) | JA 363 |
| 13. | Plaintiff's Brief in Opposition to Defendant Kevin Boddie's Motion to Dismiss (ECF No. 36) | JA 367 |
| 14. | Reply Memorandum in Support of Defendant Kevin Boddie's Motion to Dismiss Plaintiff Uber's Petition to Compel Arbitration (ECF No. 39) | JA 378 |
| 15. | Transcript for Motion Hearing held on 6/12/24 re [30] MOTION to Dismiss Plaintiff's Petition to Compel Arbitration (ECF No. 42) | JA 394 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UBER TECHNOLOGIES, INC. | Civil Action No. 2:23-cv-03780 |
| Plaintiff, | |
| v. | |
| KEVIN BODDIE, et al | |
| Defendant. | |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff Uber Technologies, Inc. hereby appeals to the United States Court of Appeals for the Third Circuit from the Order entered in the above matter on August 23, 2024 granting the Pennsylvania Human Relations Commission's Motion to Intervene as Defendant, granting Defendant Kevin Boddie's Motion to Dismiss, and granting Defendant Pennsylvania Human Relations Commission's Motion to Dismiss.  (ECF 46).

Respectfully submitted,

/s/ William J. Simmons
William J. Simmons (PA Bar No. 206860)
Kevin B. Frankel (PA Bar No. 327459)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000 – telephone
267.402.3131 – facsimile
wsimmons@littler.com
kfrankel@littler.com

*Attorneys for Plaintiff Uber Technologies, Inc.*

Dated: September 23, 2024

JA 001

## CERTIFICATE OF SERVICE

I, Kevin B. Frankel, hereby certify that Plaintiff Uber Technologies, Inc.'s Notice of Appeal was filed using the ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

Dated: September 23, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UBER TECHNOLOGIES, INC.,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN BODDIE,** | : | **NO. 23-3780** |
| *Defendant* | : | |

## ORDER

**AND NOW**, this 23rd day of August 2024, upon consideration of Uber's Petition to Compel Arbitration (DI 1), Uber's Memorandum of Law in Support of Petition to Compel Arbitration (DI 3), Pennsylvania Human Relations Commission's Motion to Intervene as Defendant (DI 7) and all attachments and responses thereto, and Defendant Kevin Boddie's Motion to Dismiss (DI 30) and all responses thereto, for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** as follows:

1. Pennsylvania Human Relations Commission's Motion to Intervene as Defendant (DI 7) is **GRANTED**.

    a. The Clerk of Court is **INSTRUCTED** to add Pennsylvania Human Relations Commission as a Defendant in the above-captioned action.

    b. Pennsylvania Human Relations Commission's Motion to Dismiss and all attachments thereto (DI 7-3, 7-4, 7-5) are **DEEMED FILED**.

2. Defendant Kevin Boddie's Motion to Dismiss (DI 30) and Pennsylvania Human Relations Commission's Motion to Dismiss (DI 7-3) are **GRANTED**.

JA 003

3.  The Clerk of Court is **INSTRUCTED** to mark this case closed for all purposes, including

statistics.

_____

**MURPHY, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC., | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KEVIN BODDIE, | : | |
| *Defendant* | : | No. 23-3780 |

## MEMORANDUM

**MURPHY, J.**                                                        **August 23, 2024**

The narrow issue resolved here is whether an employer can use an arbitration agreement with its employee to stop an investigation by the Pennsylvania Human Relations Commission. No, it turns out. But under the surface, this case is about the PHRC's administrative maneuvering to re-open an old investigation into Uber, the employer, brought by the employee, Mr. Boddie, and seemingly avoid the statute of limitations. Uber tried something creative and filed this suit to try to enforce its arbitration agreement with Mr. Boddie, but prevailing legal authority forbids that particular tactic.

In 2018, Uber discovered that one of its drivers, defendant Mr. Boddie, had a sixteen-year-old criminal conviction and revoked his permission to work as an Uber driver. Mr. Boddie then filed a pro se charge of discrimination based on age and sex against Uber with the Pennsylvania Human Relations Commission (PHRC). In March 2022, the PHRC found no probable cause and closed the case. Then, in January 2023, the PHRC mysteriously re-opened the case. Two months later, Mr. Boddie filed an amended charge under the same case number, averring that Uber's background check policy had a disparate impact on Black and Hispanic men. Uber protested the re-opening of Mr. Boddie's case, but the PHRC rejected Uber's

1

arguments and proceeded to investigate.  However, when the deadline arrived for Uber to

provide information to the PHRC, Uber commenced this lawsuit against Mr. Boddie.

Uber seeks an injunction compelling Mr. Boddie to withdraw his charge of racial

discrimination from the PHRC and arbitrate his claims.  The PHRC moves to intervene as a

defendant and to dismiss Uber's complaint.  Mr. Boddie also moves to dismiss.  For the reasons

that follow, we grant the PHRC's motion to intervene and grant the motions to dismiss.

## I.    <u>Background</u>

Uber connects drivers with riders in need of local rides.  DI 1 ¶¶ 8–9.  To facilitate this

process, Uber uses two different applications: drivers download Uber's Driver Application

(Driver App), and riders download Uber's Rider Application.  *Id.* ¶ 9.  In December 2016,

Defendant Kevin Boddie downloaded the Driver App.  *Id.* ¶ 10.  Two months later, in order to

continue using the Driver App, Mr. Boddie entered into an agreement with an Uber subsidiary.

*See id.*  Uber is an intended third-party beneficiary of that agreement, which contains an

arbitration agreement.  *Id.* ¶¶ 11, 13.  The arbitration agreement is attached to the complaint and

occupies about eight, single-spaced pages.  *See id.* at 25–32 (ECF).  At least three excerpts

warrant reproduction:

> Except as it otherwise provides, this [arbitration agreement] is
> intended to apply to the resolution of disputes that otherwise would
> be resolved in a court of law or before any forum other than
> arbitration, with the exception of proceedings that must be
> exhausted under applicable law before pursuing a claim in a court
> of law or in any forum other than arbitration.

*Id.* at 27–28 (ECF).

> Except as it otherwise provides, this [arbitration agreement] also
> applies to all disputes between you and . . . Uber, . . . including but
> not limited to any disputes arising out of or related to this
> Agreement and disputes arising out of or related to your
> relationship with . . . Uber, including the formation or termination

2

> of the relationship. Except as it otherwise provides, this
> [arbitration agreement] also applies to disputes regarding any city,
> county, state or federal wage-hour law, trade secrets, unfair
> competition, compensation, breaks and rest periods, expense
> reimbursement, termination, harassment, retaliation,
> discrimination, and claims arising under the . . . Civil Rights Act of
> 1964, . . . Age Discrimination in Employment Act, . . . and state
> statutes, if any, addressing the same or similar subject matters[.]

*Id.* at 28 (ECF).

> [N]othing in this [arbitration agreement] prevents you from making
> a report to or filing a claim or charge with the Equal Employment
> Opportunity Commission, . . . and nothing in this [arbitration
> agreement] prevents the investigation by a government agency of
> any report, claim or charge otherwise covered by this [arbitration
> agreement]. Nothing in this [arbitration agreement] shall be
> deemed to preclude or excuse a party from bringing an
> administrative claim before any agency in order to fulfill the
> party's obligation to exhaust administrative remedies before
> making a claim in arbitration.

*Id.* at 29.

In June 2018, Mr. Boddie "became ineligible to use the Uber Driver App."[1]  *Id.* ¶ 19.  In

July 2018, Mr. Boddie submitted an Employment Discrimination Questionnaire to the PHRC,

alleging that Uber discriminated against him on the basis of age and sex.  *Id.* ¶ 20.  From the

questionnaire,[2] it appears that Uber allegedly revoked Mr. Boddie's permission to continue using

---

[1] According to Mr. Boddie, Uber terminated him "after a retroactive background check uncovered a stale conviction."  DI 30-1 at 7 (ECF).

[2] This questionnaire is not attached to Uber's complaint, which Uber styled a "Petition to Compel Arbitration," but the questionnaire is attached to a so-called "Memorandum of Law in Support of Petition to Compel Arbitration," which Uber filed the day after it commenced suit. *See* DI 1, 3, 3-3.  Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944 (1985)).  "[T]he primary problem raised by looking to documents outside the complaint" is "lack of notice to the plaintiff," which "is dissipated 'where the plaintiff has actual notice and has relied upon these documents in framing the complaint.'"  *Id.* (cleaned up) (quoting *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993)).  That Uber attached this

3

the Driver App because a background check disclosed his 2002 criminal conviction, though Mr. Boddie had understood Uber only to require that its drivers have no criminal convictions in the preceding seven years.  *See* DI 3-3 at 5–6 (averring that Mr. Boddie was "fired because of old background (2002)" and that Mr. Boddie was discriminated against "as a person who have not convicted a felon[y] pass 7 years all of sudden fired from driving [be]cause of a pass background in '2002'").  Two years later, on July 22, 2020, the PHRC served Uber with Mr. Boddie's questionnaire (now styled as a complaint), which was dual-filed with the EEOC.  *See* DI 1 ¶ 21.  Almost two years after that, in March 2022, the PHRC found that there was no probable cause to support a finding that Mr. Boddie had been discriminated against on the basis of age or sex.  *See id.* ¶ 23.  On July 7, 2022, the EEOC adopted the PHRC's finding of no probable cause and issued a right-to-sue letter, giving Mr. Boddie 90 days to file suit.  *Id.* ¶¶ 25–26.  Mr. Boddie did not file suit against Uber or demand arbitration.  DI 1 ¶ 27.

In March 2023, Mr. Boddie submitted an amended complaint[3] to the PHRC, which agreed to consider it over Uber's objections.[4]  *See id.* ¶¶ 28, 31–32.  Mr. Boddie's amended

---

questionnaire to a memorandum filed the day after the complaint confirms that Uber had actual notice of the questionnaire — indeed, the Petition to Compel Arbitration specifically describes the contents of the questionnaire.  *See* DI 1 ¶ 22; *cf. In re Burlington*, 114 F.3d at 1426 (explaining document "explicitly relied upon in the complaint" may be considered at motion to dismiss stage (quoting *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996))).  In any case, although the specific allegations contained in the questionnaire provide helpful context, they are not strictly necessary to our analysis of the motions to dismiss.

[3] The amended complaint was labeled a "Second Amended Complaint."  *See* DI 3-3 at 33 (ECF).  However, there is no first amended complaint either in the record or discussed in the briefing.  We therefore take the document Mr. Boddie entitled "Second Amended Complaint" to be his second complaint in this matter, not his third, and will refer to this document as the amended complaint.

[4] The PHRC reopened Mr. Boddie's case in January 2023.  DI 43 at 60:2–3.  During oral argument, counsel for the PHRC explained that, per typical agency practice, Mr. Boddie's charge was dismissed after the investigation of a non-lawyer.  *See* DI 43 at 7:11–25.  However, an attorney later reviewed Mr. Boddie's case and determined that it was "closed improperly."  *Id.* at

complaint[5] brings four class-based claims under a disparate impact theory for both the termination of and failure to hire Black and Hispanic males due to Uber's overly inclusive criminal background check procedures. *See* DI 3-3 at 33–40 (ECF). On May 30, 2023, Uber filed its answer to the amended complaint, which argued against the propriety of re-opening Mr. Boddie's charge on several grounds. *See* DI 1 ¶ 31. In July, the PHRC rejected Uber's arguments. *See id.* ¶ 32. The PHRC requested information from Uber as part of its investigation into Mr. Boddie's amended complaint. *See id.* ¶ 33. Uber then filed the present lawsuit.

## II.    **Procedural History**

On September 27, 2023, Uber commenced the present action against Mr. Boddie by filing a "Petition to Compel Arbitration."[6] DI 1. The petition asks the Court for a permanent injunction compelling Mr. Boddie to arbitrate the claims in his amended complaint before the PHRC. *Id.* ¶¶ 35–39. The following day, Uber filed a document that appears to be a memorandum in support of its petition, as well as a motion for both a temporary restraining order and a preliminary injunction. *See* DI 3 (document entitled "Memorandum of Law in Support of

---

7:16–8:1. The PHRC has not explained the particular impropriety this attorney found, but it did represent that the attorney's review "was a reconsideration on the merits." *Id.* at 8:8–9. The results of this reconsideration were documented in "an opinion of legal counsel," which the PHRC has not disclosed. *Id.* at 9:7–15. Oral argument gave us the distinct impression that there is more to the story than what we have been told, but as this opinion explains, we are not in a position to find out what happened and whether it was proper.

[5] The amended complaint is attached to Uber's so-called "Memorandum of Law in Support of Petition to Compel Arbitration" but not to the "Petition to Compel Arbitration" itself. *See* DI 1, 3, 3-3 at 33. Nonetheless, Uber explicitly relies on the amended complaint in its Petition to Compel Arbitration. *See* DI 1 ¶¶ 29–30 (characterizing allegations of amended complaint). Thus, the Court may consider the amended complaint at the motion to dismiss stage. *See In re Burlington Coat Factory*, 114 F.3d at 1426.

[6] This action was originally on the docket of the late Honorable Gene E.K. Pratter.

Petition to Compel Arbitration, Order to Show Cause, Motion for Temporary Restraining Order and Preliminary Injunction").

On November 22, 2023, the PHRC filed a motion to intervene as a defendant, which Uber opposes.  DI 7; DI 10.  The PHRC attached a proposed Motion to Dismiss to its Motion to Intervene.  DI 7-3; DI 7-4 DI 7-5.

On December 4, 2023, Judge Pratter issued an order directing Uber to show cause that it had served Mr. Boddie with the summons and complaint in this matter.  DI 8.  After granting an extension, Uber purported to serve Mr. Boddie by leaving the summons and complaint with an unnamed employee in the leasing office of Mr. Boddie's apartment building.  DI 8; DI 13; DI 14.  Upon Uber's request, the Clerk of Court entered default against Mr. Boddie on February 28, 2024.  DI 16, DI 17.  However, Mr. Boddie eventually obtained counsel and filed a Motion to Dismiss Uber's Petition to Compel Arbitration on May 1.[7]  DI 30.  Mr. Boddie also filed a Memorandum of Law in Support of the PHRC's Motion to Intervene.  DI 31.  We held oral argument on all pending motions on June 12, 2024.  DI 42.

### III.    PHRC's Motion to Intervene

We will start by resolving the PHRC's motion to intervene.  The PHRC argues first that it is entitled to intervene as a defendant as a matter of right and, alternatively, that it is entitled to permissive intervention.  DI 7-1 at 7–14 (ECF).  Because we conclude that the PHRC is entitled to intervene as a matter of right, we need not reach the issue of permissive intervention.  Uber argues that the PHRC does not have the right to intervene because it lacks a sufficient interest in

---

[7] Oral argument on the motion to intervene was originally set for March 14, 2024.  DI 15.  However, on March 5, Mr. Boddie sent the court an e-mail requesting assistance obtaining a lawyer, and Judge Pratter stayed the action for 30 days to provide Mr. Boddie with the opportunity to obtain counsel.  DI 18.

JA 010

this action.  DI 10 at 3–9 (ECF).  Mr. Boddie disagrees, arguing that the PHRC has "an

independent and unique interest" in this action because it will affect the PHRC's ability to

investigate Mr. Boddie's administrative charge and others like it.  *See* DI 31 at 1–2 (ECF).  We

agree with the PHRC and Mr. Boddie and find that the PHRC has a sufficient interest in this

action to warrant intervention as a matter of right.

### A.    Legal Standard

The Federal Rules of Civil Procedure provide that, "[o]n timely motion," the Court:

> must permit anyone to intervene who . . . claims an interest relating
> to the property or transaction that is the subject of the action, and is
> so situated that disposing of the action may as a practical matter
> impair or impede the movant's ability to protect its interest, unless
> existing parties adequately represent that interest."

Fed. R. Civ. P. 24(a).  The Third Circuit has identified four requirements for intervention as a

matter of right: "first, a timely application for leave to intervene; second, a sufficient interest in

the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by

the disposition of the action; and fourth, inadequate representation of the prospective

intervenor's interest by existing parties to the litigation."  *Kleissler v. U.S. Forest Service*, 157

F.3d 964, 969 (3d Cir. 1998) (citations omitted).  "[W]hether the proposed intervenor's interest is

direct or remote" is the "polestar for evaluating a claim for intervention."  *Id.* at 972.

### B.    Timeliness

The PHRC timely filed its motion to intervene.  The motion was filed within two months

of when Uber commenced this action and before Mr. Boddie filed a responsive pleading.  Under

the applicable "totality of the circumstances" standard, that is timely.  *U.S. v. Alcan Aluminum,

Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994) (citation omitted).  The motion has caused no discernible

delay that might prejudice the parties.  *Cf. Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir.

JA 011

2016) (instructing the Court to consider "the prejudice that delay may cause the parties" (quoting *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005)); *In re Iraq Telecom Ltd.*, No. 19-175, 2023 WL 2402873, at *2 (E.D. Pa. Mar. 8, 2023) ("[S]ix months is not a significant delay, and there is no conceivable prejudice to any party here by any delay that may have occurred."). Uber also does not appear to contest the timeliness of the PHRC's motion.  *See generally* DI 10.

### C.  Sufficient Interest in the Litigation

An interest is "sufficient" when it is "specific to [the intervenor], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Transource Pennsylvania, LLC v. Dutrieuille*, No. 21-2567, 2022 WL 2235466 (3d Cir. June 22, 2022) (quoting *Kleissler*, 157 F.3d at 972).  The PHRC describes its interest here as its "authority to initiate, receive, investigate, and pass upon complaints charging unlawful discrimination under the PHRA," or Pennsylvania Human Relations Act.  DI 7-1 at 10 (ECF).  Indeed, the PHRA empowers the PHRC "[t]o initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices."  43 Pa. Stat. and Cons. Stat. Ann. § 957(f).  Thus, the Court finds that the PHRC's interest in responding to charges of unlawful discrimination brought under the PHRA is both specific to the PHRC and defined by statute.

The PHRC's statutorily defined interest also will be "directly affected in a substantially concrete fashion" by an injunction compelling Mr. Boddie to arbitrate his claims. *Transource*, 2022 WL 2235466, at *2 (quoting *Kleissler*, 157 F.3d at 972).  Uber argues that the PHRC lacks a sufficiently concrete interest in this litigation because Mr. Boddie's amended complaint brings claims that are untimely, waived, outside the PHRC's jurisdiction, and subject to arbitration.  *See* DI 10 at 3–9 (ECF).  In reply, the PHRC argues that Uber's assertions regarding the scope of the PHRC's jurisdiction simply underscore how the interests of the PHRC — including the

8

determination of its own jurisdiction — will be directly impacted by the outcome of this

litigation.  DI 11 at 1–2 (ECF).  We agree with the PHRC.

The outcome of this action will directly impact the PHRC's legally defined interest in

investigating Mr. Boddie's amended complaint.[8]  If Mr. Boddie must take his charge of

discrimination to arbitration, then the PHRC investigation stops.  Uber argues that the PHRC has

no interest in investigating Mr. Boddie's charge because it should never have re-opened Mr.

Boddie's case in the first place.  But that is a circular argument,[9] and this is not the proper forum

for Uber to request judicial review of the PHRC's legal determinations regarding the handling of

its own cases.  As counsel for the PHRC explained, the PHRC's rejection of Uber's arguments is

"appealable through the Commonwealth Court system . . . where all of [the PHRC's] cases are

reviewed."  DI 43 at 12:9–19.  That is not to denigrate Uber's criticism of what happened at the

PHRC.  We merely find that the PHRC's legal interest in investigating Mr. Boddie's charge of

discrimination — an interest of debatable scope — would be directly affected by an order

directing Mr. Boddie to withdraw his complaint and arbitrate his claims.  Accordingly, the Court

finds that the PHRC's interest would be "directly affected in a substantially concrete fashion by

the relief sought."  *Transource*, 2022 WL 2235466, at *2 (quoting *Kleissler*, 157 F.3d at 972).

---

[8] The timing of this action suggests that its objective was to delay or stop the PHRC's investigation.  Notably, Uber did not seek to compel arbitration until the PHRC requested information, and the deadline for providing that information had arrived.  *See* DI 7-1 at 6 (ECF).

[9] *Compare* DI 3-3 at 54–57 (arguing to the PHRC that Mr. Boddie's case should not be re-opened because: Mr. Boddie's claims in the amended complaint are time-barred, the re-opening of Mr. Boddie's case was procedurally improper, Mr. Boddie's claims lie outside the PHRC's jurisdiction, and Mr. Boddie's claims are subject to arbitration), *with* DI 10 at 2–8 (arguing to the Court that the PHRC lacks a sufficient interest in this litigation because: Mr. Boddie's claims in the amended complaint are time-barred, the re-opening of Mr. Boddie's case was procedurally improper, Mr. Boddie's claims lie outside the PHRC's jurisdiction, and Mr. Boddie's claims are subject to arbitration).

9

### D.  Impairment of Interest as a Practical Matter

As a practical matter, the disposition of this action could impair the PHRC's interest in investigating Mr. Boddie's complaint.  Uber argues that, because the PHRC has filed a separate charge of discrimination against Uber raising similar allegations,[10] the PHRC lacks a practical interest in the outcome of this matter.  DI 10 at 9 (ECF).  According to Uber, the PHRC can investigate Uber's background-check policy under the auspices of its separate charge regardless of whether the Court requires Mr. Boddie to arbitrate his charge.  *See id.*  However, as a practical matter, a PHRC investigation limited to the PHRC's separate charge against Uber would be much more limited in scope than a PHRC investigation that includes Mr. Boddie's charge, and this limitation practically impairs the PHRC's interest in investigating Mr. Boddie's charge of discrimination.

Requiring Mr. Boddie to arbitrate his charge would circumscribe the scope of the PHRC's investigation into Uber's background-check policy.  Mr. Boddie's charge was first brought in 2018, and the PHRC's separate charge against Uber was brought in 2023.  DI 43 at 14:10–12.  Due to the operative statute of limitations, the withdrawal of Mr. Boddie's charge from the PHRC would prevent the PHRC from addressing any alleged discrimination that occurred in the five intervening years.  *See id.* at 14:5–15:14, 31:8–12.  Uber avers, credibly, that the PHRC is circumventing the statute of limitations by improperly re-opening Mr. Boddie's original charge to expand its investigation to cover five additional years.  *See* DI 10 at 5–6 (ECF); DI 43 at 31:13–33:10.  But we need not resolve this statute-of-limitations dispute because the question is whether, as a practical matter, the PHRC's interest in initiating, receiving, investigating, and passing upon charges of discrimination will be impaired by an order

---

[10] During the oral argument, counsel for the PHRC confirmed that the PHRC has initiated its own charge of discrimination against Uber.  DI 43 at 12:20–13:7.

JA 014

compelling Mr. Boddie to arbitrate his complaint charging Uber with unlawful discriminatory

practices.  43 Pa. Stat. and Cons. Stat. Ann. § 957(f).  The answer to this question is yes:

compelling Mr. Boddie to arbitrate will shrink the scope of the PHRC's investigation.

Three further considerations underscore this conclusion.  First, compelling Mr. Boddie to

arbitrate his charge of discrimination would impair the PHRC's ability to remedy the particular

discrimination allegedly suffered by Mr. Boddie himself.  *See* DI 43 at 13:11–14:4.  Second, as

counsel for the PHRC explained during oral argument, the PHRC's interest in investigating

Uber's background-check policy has already been impaired by the present action: neither Mr.

Boddie's charge nor the PHRC's separate charge "have moved forward" pending the outcome of

the present action.  *Id.* at 13:8–10.  And third, compelling arbitration in the present action could

impair the PHRC's interest in investigating future charges of discrimination filed by individuals

who are subject to an arbitration clause.  *See* DI 7-1 at 11–13 (ECF).  Thus, the Court concludes

that the disposition of the present action practically threatens the PHRC's interest in

investigating charges of discrimination, including the charge of Mr. Boddie.

### E.  Adequate Representation of Interests

The burden on the PHRC to demonstrate that Mr. Boddie does not adequately represent

its interests is "minimal."  *Benjamin ex rel. Yock v. Dept. of Pub. Welfare of Pennsylvania*, 701

F.3d 938, 958 (3d Cir. 2012) (quoting *Mountain Top Condominium Ass'n v. Dave Stabbert

Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995)).  The PHRC may meet this minimal

burden based on "any of the following three grounds: (1) that although the applicant's interests

are similar to those of a party, they diverge sufficiently that the existing party cannot devote

proper attention to the applicant's interests; (2) that there is collusion between the representative

party and the opposing party; or (3) that the representative party is not diligently prosecuting the

JA 015

suit." *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992).  The

Court finds that, although the PHRC's interests are similar to those of Mr. Boddie, they are

sufficiently divergent that Mr. Boddie cannot devote proper attention to the PHRC's interests.

Uber does not appear to contest this conclusion.  *See generally* DI 10.

      Both the PHRC and Mr. Boddie seek to dismiss Uber's petition to compel arbitration.

*See* DI 7-3; DI 30.  But the PHRC argues that its interests diverge from Mr. Boddie's in three

respects.  First, the PHRC's "duty is to protect the public interest in this matter, which includes,

but is certainly not limited to just [Mr.] Boddie."  DI 7-1 at 12 (ECF).  Because of the PHRC's

broader interest, the PHRC states that, if Mr. Boddie ultimately decided it was in his best interest

to arbitrate his charge, the PHRC would still seek to preserve its power to investigate the

discrimination Mr. Boddie alleged Uber engaged in against similarly situated individuals.  *See id.*

Second, the PHRC points out that Pennsylvania statutory law contemplates that only the PHRC

or the Pennsylvania Attorney General will represent the PHRC's interests in court, rendering Mr.

Boddie's representation of the PHRC's interests inappropriate as a matter of law.  *See* 71 Pa.

Cons. Stat. Ann. § 732-403.  Third, the PHRC argues that it has a distinctive interest in

preserving its ability to investigate *future* charges of discrimination brought by individuals who

are subject to arbitration agreements.  *See* DI 7-1 at 12–13.  As an individual litigant, Mr. Boddie

lacks this institutional interest in preserving the PHRC's investigative authority moving forward.

*See id.*  And Mr. Boddie himself has stated that he does not adequately represent the PHRC's

interests.  *See* DI 31 at 2 (ECF) ("While Mr. Boddie's counsel is able to articulate Mr. Boddie's

arguments in opposition to Uber's Petition to Compel Arbitration, only the [PHRC] can provide

the agency's institutional interest in opposition to Uber's Petition.").  Thus, noting that the

PHRC's burden here is "minimal," *Benjamin*, 701 F.3d at 958, the Court concludes that Mr. Boddie does not adequately represent the PHRC's interests.

The PHRC meets all four requirements for intervention as a matter of right. The Court grants the PHRC's motion to intervene as a defendant in this action.

### IV.    Motions to Dismiss

Mr. Boddie and the PHRC both moved to dismiss Mr. Boddie's complaint.[11] *See* DI 7-3; DI 30. They argue that Uber's effort to compel arbitration of Mr. Boddie's administrative charge is both (a) precluded by *Gilmer v. Interstate/Johnson Lane Corporation*[12] and *EEOC v. Waffle House*,[13] and (b) contrary to the plain language of the arbitration agreement. *See* DI 7-4 at 9–12 (ECF); DI 30-1 at 8–11, 14–15 (ECF). In response,[14] Uber construes *Gilmer* as supporting its effort to compel arbitration and distinguishes *Waffle House*. *See* DI 36 at 4–6. We disagree with Uber's view. *Gilmer* precludes Uber's creative effort to compel arbitration here. Both the plain language of the arbitration agreement and *Waffle House* confirm this conclusion.

----

[11] The PHRC attached its motion to dismiss to its motion to intervene. *See* DI 7-3, 7-4, 7-5. Intervenors must attach "a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Although a Rule 12(b)(6) motion is not among the "pleadings" set out in Rule 7(a), "courts have liberally construed the 'pleading' requirement of Rule 24(c) to embrace other filings as long as the documents filed clearly notify the original parties of the position the applicant intervenor will assert." *New Century Bank v. Open Solutions, Inc.*, No. 10-6537, 2011 WL 1666926 (E.D. Pa. May 2, 2011). The PHRC's motion to dismiss notifies Uber and Mr. Boddie that the PHRC asserts Uber fails to state a claim. *See* DI 7-3 at 1 (ECF). Thus, the PHRC's Motion to Dismiss satisfies the requirements of Rule 24(c).

[12] 500 U.S. 20 (1991).

[13] 534 U.S. 279 (2002).

[14] Uber opposed Mr. Boddie's motion to dismiss, DI 36, but Uber did not file briefing in opposition to the PHRC's motion to dismiss, which was attached to the PHRC's motion to intervene, *see* DI 7. However, because the substance of both motions to dismiss is the same, counsel for Uber agreed during the oral argument that no further briefing is necessary, and we can address both motions here. *See* DI 43 at 45:11–18.

13

### A.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  We take well-pleaded facts to be true, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them.  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 789–90 (3d Cir. 2016).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  The Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  Next, the Court turns to the "well-pleaded factual allegations," "assume[s] their veracity," and "determine[s] whether they plausibly give rise to an entitlement to relief."  *Id.*  This analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (citation omitted).

### B.  Discussion

Uber's petition to compel arbitration brings one count against Mr. Boddie for a permanent injunction pursuant to the Federal Arbitration Act (FAA).  DI 1 ¶¶37–39.  The FAA states: "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" the court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The Supreme Court has read this provision of the FAA to "manifest a 'liberal federal policy favoring arbitration agreements.'"  *Waffle House*, 534 U.S. at 289 (quoting *Gilmer*, 500 U.S. at 25).

JA 018

As an initial matter, Uber alleges several conclusions of law in its petition that are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 679. First, Uber alleges that the claims contained in Mr. Boddie's amended complaint to the PHRC are covered by the arbitration and class-action waiver[15] provisions of his contract. *See* DI 1 ¶¶ 3, 29–30. Second, Uber alleges that the arbitration agreement here "requires that any and all disputes between Mr. Boddie and Uber . . . be decided exclusively through mandatory binding arbitration." *Id.* ¶ 36. We will not accept these allegations as true because they are disputed legal conclusions.[16] *See* DI 30-1 at 14–16; DI 7-4 at 9–10, 14–19.

We next determine whether Uber's well-pled allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. *Gilmer* supplies a clear answer: Uber is not entitled to an injunction here. The main issue in *Gilmer* was whether an employee could be compelled to arbitrate claims brought under the Age Discrimination in Employment Act (ADEA). *Gilmer*, 500 U.S. at 23. Robert Gilmer, a banker who signed an arbitration agreement when he registered as a securities representative, was fired at age 62. *Id.* Mr. Gilmer filed a charge of age discrimination with the EEOC before filing suit in federal district court. *Id.* at 23–24. The Supreme Court found that Mr. Gilmer's *judicial* suit was subject to compulsory

---

[15] Uber asks us to "enforce" the so-called "class action waiver" contained in Mr. Boddie's arbitration agreement. DI 3 at 17–18 (ECF). However, this provision is part of the arbitration agreement itself and only applies to disputes that are "in arbitration and subject to this [arbitration agreement]." DI 1 at 30 (ECF). Because the applicability of this putative waiver is coextensive with the applicability of the arbitration agreement itself, Uber's request that the waiver be enforced is subsumed by its request for arbitration. We decline to consider this part of the arbitration agreement separately.

[16] The FAA instructs that the court "shall hear the parties" and compel arbitration only "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. We are not aware of any challenge to the formation of Mr. Boddie's contract, but his alleged "failure to comply therewith" by filing an amended complaint with the PHRC is one of the central and disputed issues animating this action.

JA 019

arbitration. *See id.* at 28, 35. In so finding, the Supreme Court explained, "[a]n individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action." *Id.* at 28. The Supreme Court thus recognized a distinction between administrative charges of employment discrimination and private judicial actions: the latter are subject to compulsory arbitration, but the former are not.

The Supreme Court's distinction between charges of employment discrimination and private judicial actions is highly instructive here. Unlike Mr. Gilmer, Mr. Boddie has not filed a discrimination suit in federal district court. Mr. Boddie merely filed a charge of discrimination with the PHRC — Pennsylvania's analogue to the EEOC.[17] Uber unpersuasively argues that *Gilmer* supports compulsory arbitration here simply because the Supreme Court compelled Mr. Gilmer to arbitrate his private judicial action. *See* DI 36 at 4–5. However, this argument elides the Supreme Court's distinction between charges of employment discrimination and private judicial actions. And it follows straightforwardly from this distinction that Mr. Boddie's charge of employment discrimination is not subject to compulsory arbitration.

At the oral argument, Uber's counsel for the first time attempted to distinguish the EEOC process protected by *Gilmer* from the PHRC process at issue here. *See* DI 43 at 48:11–49:7. Counsel argued that, because the PHRC can hold adversarial proceedings, whereas the EEOC must act as an "independent prosecutor" in court, *Gilmer*'s protection of EEOC charges from compulsory arbitration does not apply to PHRC charges. *See id.* This argument is unconvincing at least because it is speculative. Although Uber's counsel stated without evidence that the

_____

[17] The PHRC is the state-level equivalent of the EEOC. *See* DI 7-4 at 5, 8, 17 n.6, 18, 19; DI 30-1 at 15–16; DI 43 at 57:1–6. Accordingly, Uber's Petition describes the PHRC and EEOC processes as unfolding in parallel. *See* DI 1 ¶¶ 1, 21, 25.

JA 020

PHRC's "end game here is an adversarial proceeding," *id.* at 49:5–6, counsel for the PHRC explained that many PHRC investigations do not lead to adversarial proceedings, *id.* at 66:10–24. And, in any case, no adversarial proceeding has commenced here.

Uber's requested relief would prevent the PHRC from even *investigating* Mr. Boddie's amended complaint. But the Supreme Court has explained that *Gilmer*'s language protecting administrative charges "addressed the role of an agency . . . *reviewing a discrimination charge* to determine whether to initiate judicial proceedings." *Preston v. Ferrer*, 552 U.S. 346, 359 (2008) (emphasis added). At this early stage, the PHRC seeks to look into Mr. Boddie's charge and determine how to proceed, which is precisely what *Gilmer* protects.[18] Notably, even the plain language of the arbitration agreement protects the PHRC's investigation: "nothing in this [arbitration agreement] prevents the investigation by a government agency of any report, claim or charge otherwise covered by this [arbitration agreement]." DI 1 at 29 (ECF). Even absent that contractual language, though, the Court would still find that *Gilmer*'s protection of administrative charges is not vitiated simply because the PHRC's investigation could lead to an adversarial proceeding that is administrative in nature.[19]

---

[18] Counsel for the PHRC explained that an adversarial proceeding brought by the PHRC could be filed in either an administrative or a judicial forum. *See* DI 43 at 66:16–21. In either case, the PHRC would file a complaint and serve the defendant. *Id.* Although *Gilmer* technically considered an EEOC investigation potentially culminating in "judicial proceedings," *Preston v. Ferrer*, 552 U.S. 346, 359 (2008), the PHRC's ability to review a discrimination charge and determine what type of proceedings to initiate remains protected under the logic of *Gilmer*.

[19] Curiously, counsel for Uber stated that the difference between an adversarial hearing before a state administrative agency and a judicial action prosecuted by the EEOC "was exactly the issue in *Blossom*[*game*], which we think should control here." DI 43 at 65:13–16. *Blossomgame* refers to a Report & Recommendation from the Eastern District of New York in which the Magistrate Judge recommended granting Uber's request for compulsory arbitration of employment discrimination claims that were pending before the New York State Division of Human Rights. *See Uber Techs., Inc. v. Blossomgame*, No. 20-CV-04842, 2021 WL 8317115, at

Uber argues in passing that *Preston v. Ferrer* demonstrates Mr. Boddie's amended complaint is subject to compulsory arbitration despite being filed with an administrative agency. *See* DI 3 at 15–16 (ECF). This argument is unpersuasive because the arbitration agreement in *Preston* is distinguishable from the arbitration agreement at issue here. In *Preston*, Alex Ferrer, a former trial court judge who appeared as "Judge Alex" on television, entered into a contract with Arnold Preston, an entertainment lawyer, for legal services. *Preston*, 552 U.S. at 350. That contract contained an agreement to arbitrate "any dispute relating to the terms of the contract or the breach, validity, or legality thereof in accordance with the rules of the American Arbitration Association." *Id.* (cleaned up). When Mr. Preston demanded arbitration over his fees, Mr. Ferrer petitioned the California Labor Commissioner for a declaration that the contract was void because Mr. Preston lacked a state-required license. *Id.* Even though California law lodged primary jurisdiction over this dispute with the Labor Commissioner, the Supreme Court found that the FAA superseded California law, and the dispute was subject to compulsory arbitration. *See id.* at 349–52, 359.

*Preston* is minimally instructive because it involved a contract for legal services with a global arbitration agreement, not an employment contract with a limited arbitration agreement like Mr. Boddie's. Consistent with *Gilmer*'s protection of administrative charges brought by employees, Mr. Boddie's arbitration agreement expressly protects Mr. Boddie's ability to bring an administrative charge of discrimination: "[n]othing in this [arbitration agreement] shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in

---

*1 (E.D.N.Y. Oct. 29, 2021). Mr. Blossomgame represented himself pro se and primarily argued that he was not subject to compulsory arbitration because he had opted out of the arbitration agreement. *See id.* at *4-5. The Magistrate Judge found that Mr. Blossomgame had not opted out and recommended compulsory arbitration without mentioning *Gilmer*. *See id.* at *5–6. Thus, *Blossomgame* is minimally instructive and does not "control here."

JA 022

order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration."   DI 1 at 29 (ECF); *see also id.* at 27–28 (excepting from compulsory arbitration "proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration").  To exhaust a claim of discrimination under the PHRA — the type of claim contained in Mr. Boddie's amended complaint — the claim must first be exhausted by filing with the PHRC.[20]  *See Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 919–20 (Pa. 1989); *Richards v. Foulke Associates, Inc.*, 151 F. Supp. 2d 610, 614–15 (E.D. Pa. 2001).  And, as the Supreme Court has explained, "it is the language of the contract that defines the scope of disputes subject to arbitration."  *Waffle House*, 534 U.S. at 289 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)).  Consistent with the law, the language of Mr. Boddie's contract unambiguously limited the scope of disputes subject to compulsory arbitration to *exclude* administrative charges necessary for exhaustion purposes.

---

[20] This is one way you can tell that Uber's efforts to compel arbitration here run upstream against legal authority.  If Mr. Boddie had filed a claim in arbitration for the counts contained in his amended complaint, Uber could argue that he failed to exhaust those claims before the PHRC; when Mr. Boddie attempted to exhaust those claims before the PHRC, Uber sought compulsory arbitration.  But Mr. Boddie must exhaust the claims from his amended complaint before he can arbitrate them, and both *Gilmer* and the plain language of his arbitration agreement protect his ability to do so.  *See Gilmer*, 500 U.S. at 28; DI 1 at 27–29 (ECF).  Uber failed to convince the PHRC that it could not consider Mr. Boddie's bid to exhaust these claims.  *See* DI 3-3 at 54–57, 62–63.  Although Uber maintains that the amended complaint is improperly before the PHRC, the fact remains that the amended complaint *is* before the PHRC.  It simply does not follow that Uber is entitled to compulsory arbitration of a protected charge because Uber contends, against the conclusions of the PHRC, that the charge was improperly brought.  There is, to illustrate the point, no clause in the arbitration agreement (nor legal authority) protecting administrative charges brought for exhaustion purposes *except for those which the employer contends are improper, regardless of the agency's position*.  Uber's legal disputes with the PHRC are appealable to Pennsylvania's courts, not to federal district court by means of a petition to compel arbitration.

JA 023

By contrast, the arbitration agreement in *Preston* flatly covered "any dispute relating to the terms of the contract or the breach, validity, or legality thereof." *Preston*, 552 U.S. at 350 (cleaned up). Considering this global arbitration agreement, the Supreme Court held, "when parties agree to arbitrate *all questions arising under a contract*, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." *Id.* at 349–50 (emphasis added). But Mr. Boddie's arbitration agreement did not refer all questions arising under the contract to an arbitrator. It expressly contemplated that some claims would be referred to administrative agencies. *See, e.g.*, DI 1 at 29 (ECF) ("[N]othing in this [arbitration agreement] prevents you from making a report to or filing a claim or charge with the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs[.]"). And "we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House*, 534 U.S. at 294. The plain text of the contract in *Preston* does not align with the plain text of Mr. Boddie's contract.

Finally, *Preston* presented a different question than the present case. The Supreme Court emphasized that Mr. Preston's petition to compel arbitration presented "precisely and only a question concerning the forum in which the parties' dispute will be heard." *Preston*, 552 U.S. at 359. Because exhaustion was not at issue in *Preston*, the dispute centered around whether the Labor Commissioner or an arbitrator would determine the validity of the contract. However, because exhaustion is a prerequisite to arbitrating Mr. Boddie's claims, the relevant question here is *whether*, not *where*, Mr. Boddie's claims will be heard. Thus, *Preston* provides very little guidance about how to resolve the present dispute.

20

Finally, *Waffle House* confirms that Uber fails to state a claim.  In *Waffle House*, Eric Baker signed an agreement with Waffle House stating that "any dispute or claim" related to his employment would be "settled by binding arbitration."  *Waffle House*, 534 U.S. at 282.  After Mr. Baker was terminated, he filed a charge of discrimination with the EEOC, but he did not initiate either judicial or arbitral proceedings thereafter.  *See id.* at 283.  The EEOC filed an enforcement action against Waffle House in federal district court seeking victim-specific relief for Mr. Baker, though Mr. Baker was not a party to that litigation.  *Id.* at 282–83.  Waffle House moved to compel the EEOC to arbitrate, but the Supreme Court held that the EEOC could not be compelled to arbitrate based on Mr. Baker's contract with Waffle House.  *Id.* at 284–85, 297–98.

*Waffle House* helps to demonstrate that Uber's petition to compel arbitration is premature.  Of course, unlike Waffle House, which sought to compel the EEOC (not Mr. Baker) to arbitrate, Uber seeks to compel Mr. Boddie (not the PHRC) to arbitrate.  Nonetheless, as a practical matter, if Mr. Boddie is compelled to arbitrate his amended complaint, then the PHRC's investigation will never get off the ground.  Waffle House unsuccessfully sought to compel the EEOC to arbitrate an "enforcement action" brought by the agency "[a]fter an investigation and an unsuccessful attempt to conciliate."  *Id.* at 283.  At the enforcement stage, the Supreme Court found, based on the plain language of Title VII, that "the EEOC has the authority to pursue victim-specific relief[.]"  *See id.* at 295.  Similarly, at the investigation stage, the PHRA explicitly empowers the PHRC "[t]o initiate, receive, *investigate* and pass upon complaints charging unlawful discriminatory practices."  43 Pa. Stat. and Cons. Stat. Ann. § 957(f) (emphasis added).  Thus, by protecting non-party agencies' ability to respond to charges of discrimination, *Waffle House* suggests that Uber may not block the PHRC's investigation by filing a petition to compel arbitration.

21

In sum, contrary to Supreme Court precedent and the plain language of its contract with Mr. Boddie, Uber asks the Court to compel Mr. Boddie to arbitrate an administrative charge of discrimination currently pending before the PHRC.  Because Mr. Boddie has both a legal and apparent contractual right to file an administrative charge of discrimination, Uber fails to state a claim.[21]  The Court grants the motions to dismiss.

**V.     Conclusion**

The Court grants the PHRC's Motion to Intervene and grants Mr. Boddie's and the PHRC's motions to dismiss.  An appropriate order follows.

---

[21] Because Uber fails to state a claim for compulsory arbitration, it follows that Uber is not entitled to a preliminary injunction.  The Court can grant a preliminary injunction after balancing four factors: (1) whether there is a reasonable probability that the movant will prevail on the merits; (2) whether the movant will be irreparably harmed absent an injunction; (3) whether the defendants will suffer even greater harm from the issuance of an injunction; and (4) whether preliminary injunctive relief is in the public interest.  *Quaker Chemical Corp. v. Varga*, 509 F. Supp. 2d 469, 477–78 (E.D. Pa. 2007) (quoting *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)).  The Third Circuit Court of Appeals has explained that "a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits . . . and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  Here, Uber has failed to state a claim upon which relief can be granted. Thus, Uber cannot demonstrate that it can win on the merits.

JA 026